UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KATHY SHERROD, SURVIVOR OF SHELDON SHERROD** | * | **CIVIL ACTION NO. 25-1248** |
| | * | **JUDGE ELDON E. FALLON** |
| **VERSUS** | | |
| | * | **MAGISTRATE JUDGE EVA J. DOSSIER** |
| **NEXION HEALTH AT MARRERO, INC. D/B/A MARRERO HEALTHCARE CENTER AND NEXION HEALTH MANAGEMENT, INC.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*

## ORDER & REASONS

Before the Court is a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants Nexion Health at Marrero, Inc. d/b/a Marrero Healthcare Center and Nexion Health Management, Inc. ("Defendants"). R. Doc. 6. Plaintiff Kathy Sherrod, surviving spouse of Sheldon Sherrod ("Sherrod") opposes the motion. R. Doc. 12. Defendants replied. R. Doc. 13. Plaintiff submitted a notice of new authority. R. Doc. 14. Considering the record, briefing, and applicable law, the Court now rules as follows.

### I.   BACKGROUND

This is a wrongful death action brought by Sherrod against Defendants for their treatment of her deceased husband. R. Doc. 1-1. Sherrod submits that her husband was a resident of Defendants' nursing home from August 2023 to December 2023. *Id.* at 2. Mr. Sherrod required extensive assistance with physical activities such as bed mobility, toilet use, and bathing. *Id.* At the time of his admission to the facility, Defendants were aware he suffered from certain conditions that placed him at a greater risk of developing pressure injuries and infections, and notably, he had an existing pressure injury at his time of arrival. *Id.*

1

Sherrod avers that her husband suffered harm as a proximate result of Defendants' facility being wholly under-resourced. *Id.* at 3. As a result of its lack of adequate staffing and funding, Mr. Sherrod's existing pressure injury worsened and he developed many new pressure injuries, including an injury to his heel that ultimately led to a below-the-knee amputation. *Id.* The facility discharged Mr. Sherrod into hospice after he spent four months in their care, and he passed away a few weeks later. *Id.* Sherrod now brings claims against Defendants, alleging that the harm and neglect they inflicted upon her husband substantially contributed to his hastened demise and wrongful death. *Id.*

Sherrod brought claims against Defendants for fraud. *Id.* at 3–11. She asserts that Defendants concealed the truth and misrepresented the adequacy of their staff, all to induce Plaintiff and her husband into enrolling her husband as a resident. *Id.* She specifically claims that Defendants did not maintain an adequate number of nursing staff despite being required to do so. *Id.* at 8–10. Defendants should have staffed their facility based not only on the number of residents, but also on the individual needs of the residents, in accordance with applicable laws and regulations. *Id.* at 9. By not doing so, the facility violated these federal and state laws that require nursing home facilities to provide sufficient staffing. *Id.* at 8–10.

Defendants removed this matter to this Court on the basis of diversity jurisdiction. R. Doc. 1. Defendants now submit the instant 12(b)(6) motion to dismiss for failure to state a claim. R. Doc. 8.

**II.    PRESENT MOTION**

Defendants ask this Court to dismiss Plaintiff's fraud claims against them because they believe her claims are truly medical malpractice claims and should have been brought under the Louisiana Medical Malpractice Act. R. Doc. 8. They assert that "[d]espite the Plaintiff choosing

to style her claims as 'fraud' claims in an apparent effort to circumvent the LMMA, the Court is still required to look at the *substance* of the allegations to determine whether these allegations fall within the definition of malpractice." R. Doc. 8-1 at 4 (emphasis in original). Because Plaintiff has not filed any claims with the medical review panel against Defendants, who submit exhibits demonstrating their enrollment with Louisiana's Patient's Compensation Fund, her claims are premature. *Id.*

Defendants submit a number of other arguments as to how the Court should characterize Plaintiff's claims if the Court finds that they are not governed by the LMMA. Notably, they argue that Plaintiff's fraud claims are most properly categorized as tort fraud, not contractual fraud, claims and that these tort claims are untimely because they were brought more than one year after her husband's death. *Id.* at 18–20. If the Court were to find the claims to be timely contractual fraud, not tort fraud, claims, Defendants contend that the Petition does not meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Id.* at 20–21. They also argue that Plaintiff has "attempted to disguise impermissible [Nursing Home Residents Bill of Rights Act] claims for personal injury and wrongful death damages as 'fraud' claims pursuant to, presumably, [La.] Civ. Code art. 1953 and 1958." *Id.* at 12–14.

Plaintiff opposes each of Defendants' arguments. R. Doc. 12. She argues that the LMMA is not applicable to her asserted claims because she has pleaded a viable intentional tort claim, and intentional torts do not fall within the scope of the LMMA. *Id.* at 10–12. As to her fraud claim, she asserts that she has adequately pleaded plausible fraud claims under both a contractual and a tort theory. *Id.* at 12–19. Moreover, she asserts that all her claims are timely because all of her fraud allegations are subject to La. Civ. Code art. 3499's ten-year prescriptive period. *Id.* at 19–24. Specifically, she argues that the nursing home owed Plaintiff and her husband fiduciary duties and

3

that claims for breaching a fiduciary duty through fraudulent acts are considered personal actions subject to La. Civ. Code art. 3499. *Id.* at 20–23. Plaintiff further contends that she has pleaded contractual fraud by alleging that Defendants fraudulently induced her and her husband to enter into a contractual agreement with Defendants, that they relied on these misrepresentations in being induced, and that they would not have entered into an admission agreement with Defendants had they properly represented the inadequacy of their facility's staffing. *Id.* at 23–24.

Defendants replied, arguing that Plaintiff's opposition highlights that her fraud claims are intentional tort claims subject to Louisiana's one-year prescriptive period. R. Doc. 13 at 2–3. They proffer that "[o]n the one hand, Plaintiff contends that Defendants are responsible for an intentional tort, which falls outside the parameters of the LMMA. On the other hand, Plaintiff contends the prescriptive period applicable to intentional torts should not apply." *Id.* at 3. They suggest that, if Plaintiff has properly asserted a "fraud" claim, it must be for contractual fraud and that Plaintiff would thus only be entitled to recover traditional contractual damages under Louisiana law. *Id.* at 6–7. Defendants also reiterated their arguments that her claims are truly medical malpractice claims subject to the statutory requirements of the LMMA. *Id.* at 3–6.

Plaintiff filed a notice of new authority relative to an opinion that was rendered after this motion was submitted to the Court. She attached as an exhibit a Ruling and Order from the Middle District of Louisiana which denied a Rule 12(b)(6) motion in what Plaintiff argues is a "substantially similar" case to the present matter that also involves the same defendants. R. Doc. 14.

### III.  APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a

4

complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff, *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

The Notice of Removal asserts that this Court has diversity jurisdiction over this case. R. Doc. 1 (relying on 28 U.S.C. § 1332). As such, this Court must apply state substantive law to its analysis of Plaintiff's claims. *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007).

**IV.    ANALYSIS**

Defendants move to dismiss Plaintiff's fraud claims, arguing that they fail as a matter of law for the following reasons: (1) the fraud claims are more properly categorized as medical malpractice claims and are thus premature; (2) if the Court categorizes Plaintiff's claims as fraud claims, her claims are most properly categorized as delictual, not contractual, tort claims and are prescribed; and (3) if the Court categorizes Plaintiff's fraud claims as contractual fraud claims, Plaintiff has not pleaded her claims such that Rule 9(b)'s heightened pleading standards are satisfied. The Court takes each issue in turn.

5

**A. Plaintiff Has Pleaded Fraud Claims, Not LMMA Claims in Disguise.**

Defendants argue that Plaintiff's claims sound in medical malpractice and are premature because Defendants are qualified healthcare providers under the LMMA and Plaintiff has not submitted her claims to a medical review panel. R. Doc. 8-1 at 3–12. Plaintiff argues that she has properly brought an intentional tort claim against Defendants for both tort and contractual fraud, and that intentional torts like these are exceptions to the LMMA and its medical review panel requirement. R. Doc. 12 at 6–19. The Court finds that Plaintiff's claims fall outside the scope of the LMMA.

Actions against healthcare providers, including nursing homes and long-term care facilities, are subject to the LMMA when the claims arise out of medical malpractice. *Patterson v. Claiborne Operator Grp., LLC*, No. 55,264 (La. App. 2 Cir. 11/15/23), 374 So. 3d 299, 306–07. The LMMA defines "malpractice" as "any *unintentional tort* or any breach of contract based on health care or professional services rendered." La. Rev. Stat. 40:1231.1(A)(13) (emphasis added). "All other tort liability on the part of the qualified health care provider is governed by general tort law." *Patterson*, 374 So. 3d at 307. "Intentional torts and contract claims *not* based [on] the healthcare provider's failure to perform healthcare/professional services properly are excluded from coverage by the LMMA." *Swain v. Lombard*, No. 55,377 (La. App. 2 Cir. 1/10/24), 378 So. 3d 909, 913. Thus, claims like fraud fall outside the ambit of the LMMA because "[t]he LMMA is designed to address negligence or unintended failures in the delivery of healthcare services, not deliberate harmful actions." *Riley v. Paramount Healthcare Consultants, LLC*, No. 2024-127 (La. App. 3 Cir. 10/30/24), 396 So. 3d 470, 476.

The Louisiana Supreme Court identified six factors for courts to consider in determining whether an action sounds in medical malpractice: (1) whether the particular wrong is treatment

related or caused by a dereliction of professional skill; (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient's condition; (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; (5) whether the injury would have occurred if the patient had not sought treatment; and (6) *whether the alleged tort was intentional*. *Coleman v. Deno*, No. 2001-1517 (La. 1/25/02), 813 So. 2d 303, 315–16 (emphasis added). A finding that the alleged tort was intentional ends the inquiry because the LMMA excludes intentional torts. *See Riley*, No. 2024-127, 396 So. 3d at 476 (analyzing the plaintiff's claims only using the last *Coleman* factor). The Court here focuses on the final *Coleman* factor and considers whether Plaintiff alleges an intentional tort.

"'To sufficiently plead an intentional tort in the context of medical malpractice, the petition must contain specific facts sufficient to establish the medical provider consciously desired the physical result of his acts or knew the result was substantially certain to follow from [its] conduct.'" *Riley*, 396 So. 3d at 477–78 (quoting *Doe v. Banks*, No. 23-914 (La. App. 1 Cir. 3/13/24), 385 So. 3d 706, 710–11). The allegations must be more than a conclusory statement that the conduct was intentional. *Id.* (citing *Self v. Willis-Knighton Med. Ctr.*, No. 55,130 (La. App. 2 Cir. 8/9/23), 369 So. 3d 455, 461).

Here, the Petition asserts a fraud claim based on Defendants' "intentional misrepresentations to and concealments from Mr. Sherrod and/or his legal representative during the process of Mr. Sherrod's admission to the facility regarding [Defendants'] compliance with Louisiana and federal nursing home standards and minimum staffing requirements, including the sufficiency of staffing and services at the facility, made to induce Mr. Sherrod to become a resident

7

at the facility." R. Doc. 1-1 at 3–4. The core claims of the Petition, therefore, allege that Defendants misrepresented or concealed information to Plaintiff and her husband in the contractual negotiation stage—allegations that demonstrate intentional conduct outside the LMMA's scope.

While the Petition does not explicitly claim that Defendants either intended to injure Mr. Sherrod or consciously desired or knew of the results that were substantially certain to flow from its conduct, the Petition clearly states that Defendants knew "at the time of Mr. Sherrod's admission to the facility . . . [that it] was inadequately staffed in violation of mandatory rules, laws, and regulations." R. Doc. 1-1 at 10. The foregoing plausibly gives rise to the inference that, because Defendants made these representations knowing at the time that it was understaffed, Defendants knew that it would be substantially certain that harm would follow from its inadequate staffing. *Riley*, 396 So. 3d at 477–78; *Andrews v. Nexion Health Mgmt., Inc.*, No. 24-560, 2025 WL 634348, at 5 (M.D. La. Feb. 26, 2025) (slip copy) (deGravelles, J.) ("While Plaintiffs do not clearly claim that Defendants intended to injure [the decedent] or knew to a substantial certainty that injury would follow from their actions, it has been sufficiently implied in the Petition that Defendants made this misrepresentation intending to cause pecuniary harm.").

Moreover, the consequences pleaded by Plaintiff also supports the finding that Plaintiff properly brings fraud, not medical malpractice, claims. She avers that if she or her husband "had known of the improper operation and inadequate staffing of the facility, [Mr. Sherrod] would not have become a resident. Due to Defendants' concealments and misrepresentations, Mr. Sherrod suffered physical harm . . . and the deprivation of staffing and services to which he was legally entitled." R. Doc. 1-1 at 10. These allegations give rise to the inference that Defendants misrepresented their staffing adequacy and compliance with the laws "either to obtain an unjust

8

advantage . . . or cause a loss or inconvenience to" the Sherrods by inducing them to pay for services seemingly provided for in the governing contract. La. Civ. Code art. 1953.

For the foregoing reasons, the Court finds that Plaintiff plausibly brings claims that fall outside of the scope of the LMMA. Plaintiff's claims are not subject to the LMMA's medical review panel requirement and the timeliness of the claims will be assessed without regard to the LMMA's requirements.

### B. Plaintiff's Fraud Claims.

Plaintiff's Petition is silent as the statute upon which she bases her fraud claims, but in her briefing relative to the subject motion, Plaintiff asserts that she has adequately pleaded both contractual and tort fraud claims. R. Doc. 12 at 12. Defendants contend that Plaintiff's allegations should be wholly construed as delictual, or tort, fraud claims subject to a one-year prescriptive period. R. Doc. 8-1 at 18–20. Plaintiff argues that her claims "involve Defendants' *deliberate* actions by a fiduciary and contractual fraud, both of which are subject to the ten-year prescriptive period under La. C.C. art. 3499 and therefore are timely pled." R. Doc. 12 at 19. For the following reasons, the Court finds that Plaintiff's fraud claims are most properly categorized as contractual fraud claims and that any delictual claims are prescribed.

#### 1. Delictual Fraud Pursuant to Louisiana Civil Code Article 2315

Fraud claims in Louisiana may arise under tort or contract. *Clark v. Constellation Brands, Inc.*, 348 F. App'x 19, 21 (5th Cir. 2009). "Louisiana law recognizes a cause of action for contractual fraud by alleging fraud in the creation of the contract; and delictual fraud by alleging fraud in the performance of the contract." *Rotating Solutions Inc. v. T A V Holdings Inc.*, No. 21-1377, 2023 WL 8523486, at *7 (W.D. La. Sept. 19, 2023), *report and recommendation adopted*, 2023 WL 8853737 (W.D. La. Dec. 21, 2023).

9

Delictual, or tort, fraud claims are governed by La. Civ. Code art. 2315. Actions that sound in tort pursuant to this provision are subject to a one-year prescriptive period that begins to run when the plaintiff has actual or constructive knowledge of facts that would indicate to a reasonable person that she is the victim of a tort. *Clark v. Constellation Brands, Inc.*, 348 F. App'x 19, 23 (5th Cir. 2009); *see also Guillot v. Doughty*, No. 2013-1348 (La. App. 1 Cir. 3/21/14), 142 So. 3d 1034, 1045–46. "Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry." *Guillot*, 142 So. 3d at 1046. The running of this prescriptive period is "suspended until the tort victim discovers or should have discovered the facts upon which [her] cause of action is based." *Id.* (citing *Doe v. Delta Women's Clinic of Baton Rouge*, No. 09-1776 (La. App. 1 Cir. 4/30/10), 37 So. 3d 1076, 1080, *writ denied*, No. 10-1238 (La. 9/17/10), 45 So. 3d 1055).

Here, Plaintiff pleaded that her husband passed away on January 10, 2024. R. Doc. 1-1 at 3. She brought the instant suit more than a year later, on April 30, 2025. *Id.* at 1–12. The Petition does not contain any allegations that could allow this Court to determine that Plaintiff would have come into knowledge of facts that would indicate to her that she is a victim of a tort after the date of her husband's death. *See Clark*, 348 F. App'x at 23. To the extent that Plaintiff claims she has properly pleaded delictual fraud claims based on fraud committed in the performance of the contract, on the face of the Petition, those claims have prescribed. The Court will grant Defendants' motion to dismiss as to any delictual fraud claims.

### 2. Contractual Fraud Pursuant to Louisiana Civil Code Article 1953

Fraud is defined in La. Civ. Code art. 1953 as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other[, and] may also result from silence or inaction." La. Civ. Code art.

10

1953. This Code article "contemplates fraud in the formation of the contract, not fraud in performing a contract" because it appears in the chapter of the Code that addresses "vices of consent." *Jeanes v. McBride*, No. 16-1259, 2019 WL 2387863, at *3 (W.D. La. June 4, 2019). "Fraud vitiates consent and thus is grounds for recission." *Stutts v. Melton*, 13-557 (La. 10/15/13), 130 So. 3d 808, 814 (internal citation omitted).

Plaintiff must adequately plead the following elements to bring a successful action for fraud against a party to a contract: "(1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to the contract." *Robinson v. Papania*, No. 2022-1010 (La. App. 1 Cir. 3/6/23), 368 So. 3d 74, 80 (*Robinson II*); *see also Riley*, 396 So. 3d at 477; *Rotating Solutions Inc. v. T A V Holdings Inc.*, No. 21-1377, 2023 WL 8523486, at *7 (W.D. La. Sept. 19, 2023), *report and recommendation adopted*, 2023 WL 8853737 (W.D. La. Dec. 21, 2023). Courts in this circuit have interpreted Louisiana law to require that the "legal standard for showing [contractual] fraud is the intention not to perform at the time the promise is made because it constitutes a misrepresentation of a present rather than a future fact." *Jeanes*, 2019 WL 2387863, at *4 (citing *Automatic Coin Enters., Inc. v. Vend-Tronics, Inc.*, 433 So. 2d 766, 767–68 (La. Ct. App. 5th 1983), *writ denied*, 440 So. 2d 756 (La. 1983)).

The Court finds that Plaintiff's allegations fit the elements of contractual fraud pursuant to La. Civ. Code art. 1953. As to the first element, Plaintiff has alleged that Defendants misrepresented, suppressed, or omitted true information during the intake process by alleging that "the facility administrator, admissions coordinator, and/or other representative(s), actively and intentionally concealed and/or suppressed . . . the material fact that Defendants did not have

11

sufficient nursing staff . . . as mandated by applicable rules, laws, and regulations." R. Doc. 1-1 at 5. Plaintiff asserted that Defendants knew the "true information" that they were in noncompliance with the applicable laws and regulations governing adequate staffing of nursing homes because "as owners, operators, and/or managers of a skilled nursing facility, [Defendants] cannot claim ignorance of . . . regulatory requirements." *Id.* at 8. Moreover, throughout the Petition, Plaintiff consistently references that Defendants knew of their noncompliance with staffing laws and regulations "at all relevant times." *E.g.*, R. Doc. 1-1 at 4, 9. Liberally construing the allegations, includes the times before and during the formation of the residential contract. Thus, Plaintiff has adequately pleaded that Defendants misrepresented a present, rather than a future, fact to her and her husband while negotiating the contract for Mr. Sherrod's stay at Defendants' facility. *Jeanes*, 2019 WL 2387863, at *4.

As to the second element, Plaintiff has adequately pleaded that Defendants intended to obtain an unjust advantage or intended to cause damage or inconvenience to her or her husband. The Petition alleges that "Defendants did not devote sufficient financial resources to the proper staffing of the facility and instead diverted those resources to create ill-begotten profits . . . by understaffing the facility." R. Doc. 1-1 at 6. Implicit in this assertion is that Defendants intended to injure Plaintiff and her husband through pecuniary harms because it sought to make money off its residents, including Mr. Sherrod, without providing the required level of care. It is plausible that Defendants harmed Plaintiff and her husband by intending to convince them to spend money under Mr. Sherrod's residential contract knowing it would not devote that money to, for example, ensuring their facility had adequate staffing. *See id.* at 5 ("This underfunding, under-resourcing, and understaffing of the facility resulted in increased revenues and, in turn, increased profits."). This also strikes at Defendants' alleged intention not to perform at the time they entered into the

contract with Plaintiff and her husband. *Jeanes*, 2019 WL 2387863. In any event, these allegations are enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556.

The final element requires Plaintiff to have pleaded that the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to the contract. The Petition makes clear that Plaintiff and Mr. Sherrod would not have entered into the contract with Defendants if Defendants had represented the truth of their staffing habits and noncompliance with governing laws and regulations. *See* R. Doc. 1-1 at 6 ("This knowing concealment and/or suppression of the truth was intended to deceive Mr. Sherrod . . . into believing that the facility was properly operated and staffed to induce him into becoming a resident at the facility."); *see also id.* ("Had these concealed facts been disclosed to Mr. Sherrod and/or his legal representative, he would not have entered into an admission agreement with Defendants and become a resident of the facility."). The Court therefore finds that Plaintiff's allegations sound in contractual fraud and will address whether Plaintiff has satisfied Fed. R. Civ. P. 9(b)'s heightened pleading requirements in subpart IV.C.

However, it is vital that the Court pause here to note the interconnectedness of contractual fraud and tortious fraud in Louisiana law. When claimants—like Plaintiff here—generically plead a "fraud" claim, to ascertain the applicable prescriptive period, courts must look to the character of the pleading and the form of the action to determine whether the allegations sound in tort or in contract. *Retina & Vitreous*, 2024 WL 3307848, at *10 (citing *Fed. Ins. Co. v. Ins. Co. of N. Am.*, 263 So. 2d 871, 872 (La. 1972)). Here, because all delictual claims are prescribed, the Court is constrained to an analysis of whether Plaintiff's claims sound in contractual fraud, despite the observation that many of the allegations in the Petition that strike at the elements of delictual

13

fraud.[1] *See, e.g.*, *Cole v. St. Joseph of Harahan*, No. 24-148, 398 So. 3d at 113 ("Under Louisiana law, cases presenting [delictual] causes of action for misrepresentation are evaluated using a duty-risk analysis.").

One important way that courts evaluate whether a claimant brings contractual or delictual fraud claims is by analyzing the requested damages. Here, Plaintiff's Petition prays for damages "in an amount reasonable under the premises, including an award of attorney fees pursuant to La. C.C. art. 1958." R. Doc. 1-1 at 11. Notably absent from this prayer is a reference to any specified contractual remedy, except for Plaintiff's prayer for attorneys' fees. *See* La. Civ. Code art. 1958 ("The party against whom rescission is granted because of fraud is liable for damages and attorney fees."). But as a court in this circuit recently explained, plaintiffs do not need to seek recission of the contract to recover damages relating to the contract. *Retina & Vitreous*, 2024 WL 3307848, at *11 (discussing *Stutts*, No. 13-557, 130 So. 3d at 814–15).

In *Retina & Vitreous of Louisiana, Inc. v. Mason*, the district court found that a plaintiff had alleged a contractual fraud claim even though he prayed for tort-like, not contractual, damages. *Id.* The court found it more important to assess the core of the allegations rather than the prayer for damages in determining whether the plaintiff brought a contractual or tort fraud claim. *Id.* It found that the "root of [the plaintiff's] allegations . . . is that [the defendant] misrepresented its financial situation and did not disclose key facts about [it] during the negotiation process." *Id.* The

---

[1] The similarities between the types of claims are striking. For example, one Louisiana court recently stated that "[t]he cause of action for fraud or intentional misrepresentation in the formation of the contract is subject to a prescriptive period of one year commencing to run from the day the injury or damage is sustained." *McGaha v. Franklin Homes, Inc.*, No. 2021-0244 (La. App. 4 Cir. 2/4/22), 335 So. 3d 842, 865 (citing La. Civ. Code art. 3942).

Other courts in this circuit have also observed that "Louisiana law is well-settled that claims for negligent and intentional misrepresentation are delictual in nature and are subject to a one-year liberative prescriptive period. Fraudulent inducement claims . . . are also subject to the one-year prescriptive period for delictual actions." *RedHawk Med. Prods. & Servs. LLC v. D & V Med. LLC*, No. 24-436, 2024 WL 5495301, at *3 (W.D. La. Dec. 10, 2024) (internal citations omitted). The substantial overlap in the elements and nature of delictual fraud claims and contractual fraud claims is considerably contrasted by the vast difference in their prescriptive periods—one year versus ten years.

Court finds the reasoning in *Retina & Vitreous* applicable here. The core of Plaintiff's claims is that Defendants misrepresented the staffing adequacy—and regulatory compliance—of Defendants' facility in order to induce them into enrolling her husband as a resident. That Plaintiff did not pray for recission of the contract does not defeat her contractual fraud claim.

### C. Plaintiff Satisfied Rule 9(b)'s Heightened Pleading Standards.

The Court has determined that Plaintiff's claims can be brought as contractual fraud claims. The next task is determining whether Plaintiff has pleaded these allegations pursuant to the heightened pleading requirements for fraud claims. *See* Fed. R. Civ. P. 9(b).

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "Pleading fraud with particularity in [the Fifth] circuit requires time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Said differently, "Rule 9(b) requires, at a minimum, 'that a plaintiff set forth the who, what, when, where, and how of the alleged fraud.'" *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)) (internal quotation marks omitted).

Plaintiff has properly alleged the who, what, when, where, and how of the alleged fraud. First, the "who" is plead to be "Defendants, upon information and belief through the facility administrator, admissions coordinator, and/or other representative(s)." R. Doc. 1-1 at 5. Second, the "what" is characterized as Defendants' "actively and intentionally conceal[ing] and/or suppress[ing] the truth from Mr. Sherrod and/or his legal representative the material fact that Defendants did not have

15

sufficient nursing service personnel . . . mandated by applicable rules, laws, and regulations." *Id.* Third, Plaintiff explains the "when" as "[b]efore and during the admission process" meaning during the contract negotiations. *Id.* Fourth, the "where" is at "the facility" defined in the Petition as Marrero Healthcare Center, located at 5301 August Avenue, Marrero, Louisiana 70072. *Id.* at 1. Fifth and finally, "how" the fraud occurred is pleaded a bit more vaguely, but presumably occurred during written and oral negotiations while Plaintiff and her husband were engaged in discussions with the facility during the admission process. *Id.* at 7 ("during the process of [Mr.] Sherrod's admission to the facility . . . Defendants . . . made written and verbal representations and assurances to Mr. Sherrod and/or his legal representative that misrepresented their compliance with the abovementioned rules, laws, and regulations"). The Court therefore finds that Plaintiffs have met the heightened pleading standards and will deny the motion to dismiss on this ground.

### D. Parties' Remaining Arguments.

The Court has found that Plaintiff's contractual fraud claims survive and that her delictual fraud claims have prescribed. Before concluding, the Court will briefly address the parties' remaining arguments. First, the Court will not entertain Plaintiff's present arguments regarding any breaches of duties, as Plaintiff's tort claims have prescribed and she does not otherwise bring any claims that require contemplation of a duty/risk analysis. *See* R. Doc. 12 at 19–23. (discussing cases which, upon the Court's review, discuss claims of breach of fiduciary duty under Louisiana law when fiduciaries commit fraud as the method of breaching their duties).

The Court also declines to adopt Defendants' perspective that the Nursing Home Residential Bill of Rights ("NHRBR") precludes Plaintiff's recovery of damages. R. Doc. 8-1 at 13–14. Defendants argue that Plaintiffs cannot recover damages for violations of the NHRBR because it provides injunctive relief as the exclusive remedy for nursing home residents when the

facility violates its provisions. *Id.* They aver that "Plaintiff's claim for contractual fraud does not include allegations . . . other than the alleged NHRBR violations." *Id.* at 14 (emphasis removed). This assertion is not true on the face of the Petition. The Petition describes that Defendants misrepresented their compliance with a number of state and federal regulations beyond the NHRBR, including noncompliance with 42 C.F.R. § 483.35 and provisions of the Louisiana Administrative Code. *See, e.g.*, R. Doc. 1-1 at 3–5, 8–11. Furthermore, the Petition alleges that Plaintiff and her husband entered into the admissions agreement with Defendants in reliance on the misrepresentations of Defendants' compliance with these non-NHRBR laws and regulations. *E.g., id.* at 4–6.

Moreover, the Court agrees with other courts in this circuit that have already addressed this argument. These other courts have determined that contractual fraud claims brought by similarly situated plaintiffs could survive insofar as they relied on allegations that Defendants misrepresented their compliance with 42 C.F.R. § 483.35.[2] *See Andrews*, 2025 WL 634348, at *5–6 (deGravelles, J.) (agreeing with *Lunkin* and finding a plaintiff's fraud claim to be available "in so far as they allege a misrepresentation of compliance with [§ 483.35]"); *Lunkin ex rel. Blanchard v. Nexion Mgmt., Inc.*, No. 24-673, 2024 WL 5317288, at *3–5 (M.D. La. Nov. 19, 2024) (slip copy) (Jackson, J.) ("Defendants argue that Plaintiff relies only on the NHRBR to establish the duty owed to her. Defendants apparently ignore, however, Plaintiffs reference to [the Code of Federal Regulations]").

## V.   CONCLUSION

For the foregoing reasons,

---

[2]   Section 483.35 of Title 42 of the Code of Federal Regulations provides that "[t]he facility must have sufficient nursing staff . . . as determined by resident assessments and individual plans of care and considering the number, acuity, and diagnoses of the facility's resident population in accordance with the facility assessment required at § 483.71."

**IT IS ORDERED** that the motion to dismiss, R. Doc. 8, is **GRANTED IN PART AND DENIED IN PART**. The motion is granted as to Plaintiff's delictual fraud claims, which have prescribed. The motion is denied as to Plaintiff's contractual fraud claims.

New Orleans, Louisiana, this 9th day of October, 2025.

_____
THE HONORABLE ELDON E. FALLON