**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KATHY SHERROD, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-01248** |
| **NEXION HEALTH AT MARRERO, INC., ET AL.** | **SECTION: "L" (3)** |

**DECLARATION OF JORDAN JEANSONNE PURSUANT TO FED. R. CIV. P. 56(d)**

I, Jordan Jeansonne, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am an attorney licensed to practice law in the State of Louisiana and before this Honorable Court, and I am counsel of record for Plaintiff Kathy Sherrod ("Plaintiff") in the above-captioned matter. I make this Declaration pursuant to Fed. R. Civ. P. 56(d) in support of Plaintiff's Emergency Motion to Stay Consideration of Defendant Nexion Health Management, Inc.'s ("NHM") Motion for Partial Summary Judgment ("Motion") (R. Doc. 113) pending the Court's ruling on Plaintiff's Motion for Review (R. Doc. 115) of the Magistrate Judge's order (R. Doc. 98) denying Plaintiff's Motion to Compel NHM's Complete Responses to Plaintiff's Requests for Production of Documents (R. Doc. 78). I have personal knowledge of the facts stated herein through my role in propounding the discovery at issue, conducting the related Rule 37 conferences, and preparing the Motion to Compel, and through my review of the record, including the transcript of NHM's Rule 30(b)(6) deposition.

2. Plaintiff cannot present facts essential to fully support her opposition to NHM's Motion because those facts are contained in documents that are in NHM's exclusive possession, that NHM's own corporate representative confirmed under oath exist, that NHM has

**Exhibit 1**

refused to produce, and that are the subject of Plaintiff's pending Motion for Review filed September 10, 2026.

**A. NHM's Motion Turns on NHM's Relationship to the Admission Agreement**

3. NHM's Motion rests on a single contention: that because Plaintiff did not sign a contract with NHM, there is no privity of contract between them, and Plaintiff's contractual fraud claim against NHM therefore fails. (R. Doc. 113-1 at 1, 4.) NHM's Statement of Undisputed Material Facts asserts that "[a]t no time did Nexion ever contract with Kathy or Sheldon Sherrod to provide care for Mr. Sherrod" and that "Nexion and Marrero are separate corporations." (R. Doc. 113-6 ¶¶ 4–5.)

4. To support those assertions, NHM offers only (i) excerpts of Plaintiff's deposition (R. Doc. 113-2); (ii) the Nursing Facility Admission and Financial Agreement and related admission documents (the "Admission Agreement") (R. Doc. 113-3); (iii) two pages of testimony from NHM's Rule 30(b)(6) designee, Don L. Sowell, Jr., elicited by NHM's own counsel at the close of the deposition (R. Doc. 113-4 at 57:12–58:7); and (iv) Louisiana Secretary of State certificates for NHM and co-defendant Nexion Health at Marrero, Inc. d/b/a Marrero Healthcare Center ("Marrero Healthcare" or "facility") (R. Doc. 113-5).

5. Whether NHM is in fact a stranger to the Admission Agreement—or whether it instead authored that contract, controlled the facility and the admissions process on whose behalf the contract was executed, and knew the very facts Plaintiff alleges were misrepresented to and concealed from the Sherrods to induce it—is a fact-intensive question. This Court has already held that Plaintiff adequately alleged that "Defendants misrepresented a present, rather than a future, fact to her and her husband while negotiating the contract for

Mr. Sherrod's stay at Defendants' facility." (R. Doc. 15.) The evidence that will answer that question is, almost entirely, in NHM's possession, custody, or control.

### B. The Existing Record Confirms that the Withheld Evidence Exists and Bears Directly on NHM's Role

6. Although NHM's Motion cites only two pages of its designee's testimony, the same designee testified on NHM's behalf at the August 4, 2026 Rule 30(b)(6) deposition that:

(a) NHM created the Admission Agreement used with the Sherrods, which the facility then "adopted." (R. Doc. 78-6 at 53:24–54:9.) He also confirmed that the agreement bears the NHM logo. (*Id.* at 50:5–12.)

(b) NHM created and disseminated the written policies and procedures that the facility adopted and that facility staff were required to follow, and, to his knowledge, the facility has never rejected an NHM policy. (*Id.* at 18:15–24; 19:13–20:14; 25:10–15.). Among those policies and procedures was one entitled "Admissions Policies," which was separately produced by Marrero Healthcare.

(c) Marrero Healthcare's administrator, Phillip Sweeney, reported directly to Mr. Sowell, who agreed that he was Mr. Sweeney's "boss." (*Id.* at 17:16–18:14.)

(d) NHM assisted in preparing the facility's budget, which "includes expenditures for nursing staff," and Mr. Sowell and the administrator together "come up with a budget or, you know, target and a guideline" for the year. (*Id.* at 7:21–8:5; 27:1–15.)

(e) NHM provided accounts-receivable, accounts-payable, and payroll support to the facility. (*Id.* at 8:6–17.)

(f) NHM had access to the facility's census and staffing data, including the ADP payroll system reflecting the hours worked by each employee, and Mr. Sowell received a system-generated census report by email "typically daily." (*Id.* at 15:5–17:15.)

(g) NHM and Marrero Healthcare personnel exchanged emails throughout 2023 as "the course of normal business," including communications from NHM's Chief Operating Officer to the facility. (*Id.* at 25:22–26:12.)

(h) The facility shared its Louisiana Department of Health ("LDH") statements of deficiencies (Form 2567) and plans of correction with NHM, which "keep[s] a record of them," and NHM "want[s] to ensure that the facility responds to LDH appropriately" for which written communication exists. (*Id.* at 31:23–32:7; 34:11–19; 45:10–20.)

7. NHM's own exhibit further shows that NHM and Marrero Healthcare are both Delaware corporations that share the same principal business office—6937 Warfield Avenue, Sykesville, Maryland, the same business address Mr. Sowell gave for himself (R. Doc. 78-6 at 5:5–9)—the same registered agent, and the same four officers: Francis P. Kirley (President and Director), Meera Riner (Secretary), Daniel J. Pierce, Jr. (Treasurer), and John P. Oswald (Director); NHM lists one additional director. (R. Doc. 113-5 at 1–2, 4–5; R. Doc. 78-6 at 14:2–15.) NHM has also represented in discovery that there is no written management, administrative services, or consulting agreement between NHM and Marrero Healthcare (R. Doc. 78-3 at 3; R. Doc. 78-5 at 4), and it has acknowledged that it provides Marrero Healthcare "a corporate clinical specialist who provides direct serv[ic]es and patient care" (R. Doc. 78-3 at 4). In discovery, Marrero Healthcare identified Mr. Sowell, NHM's Corporate Clinical Specialist Donna Boudreaux, and Ms. Riner as members of Marrero Healthcare's governing body during Mr. Sherrod's residency. (*See* R. Doc. 78-2 at 23–25.)

8. NHM's Exhibit B, moreover, as NHM's designee acknowledged, bears the NHM logo. (*Compare* R. Doc. 113-3 at 1, *with* R. Doc. 78-6 at 50:5–12.) The other admission

documents NHM attached, including the Statement of Resident Rights and the Admissions Agreement Addendum, also bear what NHM's designee testified is the NHM logo. (*See, e.g.*, R. Doc. 113-3 at 11, 13, 21.) The Admission Agreement was signed for the facility by Brandy Bush as "Facility Representative," and Plaintiff testified that she met with Ms. Bush and a second person she could not identify during the admissions process. (R. Doc. 113-3 at 10; R. Doc. 113-2 at 29:12–25.) The record does not disclose which of the Defendants employed, trained, or directed those individuals.

### C. NHM Withheld the Discovery on the Very Ground on Which It Now Seeks Summary Judgment

9. Plaintiff served her First Request for Production of Documents on NHM on November 5, 2025. In its December 19, 2025 responses, NHM objected to eighteen separate requests on the stated ground that NHM "is not party to any contract with Plaintiff or Sheldon Sherrod. Consequently, information or documents obtained from Nexion Management will not be relevant to any contractual fraud claims in this lawsuit." (R. Doc. 78-3 at 3–21 (Resps. to Req. Nos. 2–19).)

10. NHM has thus withheld the documents bearing on its role in the formation of the Admission Agreement, admissions policies utilized in the admission of Sheldon Sherrod, and its involvement in and/or control over the conduct of the actors involved in that admissions process, on the premise that it is not a party to the admissions agreement. And while Plaintiff's challenge to that refusal remains pending before this Court, NHM now asks the Court to dismiss it from this case with prejudice on that same premise—before the documents are produced. (*See* R. Doc. 113-7.)

**D. The Specific Discovery at Issue and the Facts It Is Expected to Establish**

11. Plaintiff's Motion to Compel sought the following categories of documents, each (other than Request No. 11) limited to a period no broader than March 1, 2023 through December 22, 2023—approximately six months before Mr. Sherrod's admission through his discharge, the same period this Court previously found relevant and appropriately limited in compelling similar discovery from Marrero Healthcare (R. Doc. 51). (R. Doc. 78-2 at 11–25.) NHM produced <u>none of its own documents</u> in response to these requests; where it responded at all, it referred Plaintiff to documents produced by its co-defendant. (*Id.*; R. Doc. 86 at 3–6.)

(a) **Staffing and census documents (Request Nos. 3 and 4).** Documents, including emails, exchanged between NHM and Marrero Healthcare concerning staffing, staffing levels, and census—including the daily system-generated reports emailed to Mr. Sowell (i.e., not from Marrero Healthcare and, thus, not encapsulated by its separate production); the ADP payroll and staffing data to which NHM has access; Payroll Based Journal data, CASPER reports, punch-detail reports, employee rosters, and in-service training documents; and the emails transmitting them. (R. Doc. 78-6 at 15:5–17:15; 28:23–29:24.) NHM has stated that it "supports its facilities by providing … PPD recommendations based on census trends." (R. Doc. 78-5 at 7.) These documents are expected to show that NHM monitored, and set the parameters for, the facility's staffing and census in real time when NHM's Admission Agreement was presented to the Sherrods—that is, that NHM, and not merely Marrero Healthcare, controlled and knew the true state of the very facility capabilities Plaintiff alleges were misrepresented to induce Mr. Sherrod's admission.

(b) **Budget and nursing-staff expense documents (Request Nos. 5 and 6).** The facility budget that Mr. Sowell and the administrator jointly developed—which Mr. Sowell confirmed exists ("We do have budgets"… "he can produce a budget") and includes the operating expenses for nursing staff—and the related communications. (R. Doc. 78-6 at 7:21–8:5; 30:11–31:16.) NHM refused production on "proprietary" and relevance grounds, and its counsel reiterated that objection on the record as soon as the designee confirmed that the budget exists. (*Id.* at 31:17–21; R. Doc. 78-5 at 6.) These documents are expected to show that NHM—through the budget it prepared and the accounts-receivable, accounts-payable, and payroll functions it performed—controlled the facility's finances and nursing-staff resources. Those facts bear directly on whether NHM and Marrero Healthcare operated as a single enterprise, and whether Marrero Healthcare contracted with the Sherrods as NHM's instrument, notwithstanding their formal separateness. (*Cf.* R. Doc. 113-6 ¶ 5.)

(c) **Regulatory-compliance and LDH documents (Request Nos. 7 and 8).** Documents and emails exchanged between NHM and Marrero Healthcare concerning regulatory compliance and the facility's interactions with LDH. These include communications concerning LDH's survey of the facility completed August 9, 2023, which cited the facility for failing to ensure that a resident requiring extensive toileting assistance was provided timely incontinence care (F677) and for failing to ensure wound care was provided as ordered to a resident with pressure ulcers (F686) (R. Doc. 78-6 at 36:1–40:1)—the very same injuries suffered by Sheldon Sherrod. The Admission Agreement was executed on August 22, 2023—thirteen days after that survey. (R. Doc. 113-3 at 10.) NHM's written response nevertheless stated only that it "is not presently aware of

any 'regulatory compliance issues' during the time Sheldon Sherrod was a resident"—a response confined to his residency that omits the survey completed two weeks before it began. (R. Doc. 78-5 at 7.) These documents, including emails between Defendants, are expected to show what NHM knew about the facility's deficient wound care and resident care at the moment NHM's Admission Agreement was presented to and executed by the Sherrods, and NHM's direct involvement in the facility's regulatory response—facts going to NHM's own participation in the misrepresentation or suppression of the truth that induced the contract.

(d) **Resident and staff complaint documents (Request Nos. 9 and 10).** Documents exchanged between NHM and Marrero Healthcare concerning resident complaints about facility operations and nursing care, and staff complaints about operations, staffing, and resident treatment. NHM's only substantive answer was that there were no such complaints "during Mr. Sherrod's residency" (R. Doc. 78-3 at 11–13)—which says nothing about the six months preceding the Admission Agreement—and its designee testified that he had no records beyond what counsel had provided and did not know what had been gathered or produced. (R. Doc. 78-6 at 47:19–48:17.) These documents are expected to show the complaints about staffing and nursing care that reached NHM before Mr. Sherrod's admission and how NHM responded, establishing both NHM's knowledge at the time of contracting and its operational control over the facility.

(e) **Custodial emails of the facility's decision-makers (Request Nos. 12–15 and First Request No. 19).** Emails authored or received by Phillip Sweeney (administrator), Meicholas Hebert (director of nursing), Don Sowell (NHM's regional vice president of

operations), Donna Boudreaux (NHM's Corporate Clinical Specialist), and Meera Riner (Secretary of both NHM and Marrero Healthcare)—each identified as a member of Marrero Healthcare's governing body—concerning, as Plaintiff narrowed the requests, the staffing of nursing personnel, the resident census, and complaints about nursing care. (R. Doc. 78-2 at 22–25.) Mr. Sowell confirmed that such emails were exchanged in the ordinary course during 2023 (R. Doc. 78-6 at 25:22–26:12), yet NHM's designee could say only that NHM had "produced what they can" and objected to the rest, and none have been produced. (*Id.* at 27:16–28:22; 54:10–56:19.) These communications among the individuals who actually governed the facility are expected to show who made the operational decisions at Marrero Healthcare—including decisions about staffing and census—and thus whether Marrero Healthcare's "separate" corporate existence masked an enterprise directed by NHM.

(f) **Communications with former facility employees (Request No. 11).** Communications from NHM or its counsel to former Marrero Healthcare employees referencing Mr. Sherrod or the subject matter of this litigation. NHM offered to submit these documents for *in camera* inspection, confirming that they exist. (R. Doc. 86 at 7–8.) Because Plaintiff dealt with two facility representatives during the admissions process, only one of whom she can identify (R. Doc. 113-2 at 29:12–25), these communications are expected to identify former employees with knowledge of the representations made during Mr. Sherrod's admission and of the entity that directed that process.

12. Taken together, and in light of the testimony already of record, these documents are expected to establish that NHM (i) authored the Admission Agreement and the admission

documents the Sherrods signed; (ii) controlled the facility's staffing, budget, census, and regulatory compliance—the precise subjects of the representations Plaintiff alleges induced the contract; (iii) knew, at the time of contracting, of the facility's deficiencies, including but not limited to the August 9, 2023 wound-care citation; and (iv) exerted operational control over Marrero Healthcare—an entity with identical officers, a shared principal office, no written management agreement, and an administrator who answered to NHM—as a unified enterprise. Such evidence would directly controvert paragraphs 4 and 5 of NHM's Statement of Undisputed Material Facts and would permit a reasonable factfinder to conclude that NHM is not a stranger to the Admission Agreement, but a proper defendant to Plaintiff's contractual fraud claim—whether as the principal on whose behalf and through whose instrument the contract was made, as part of a single business enterprise with Marrero Healthcare, or as a participant in the fraud that vitiated the Sherrods' consent.

**E. Plaintiff Has Diligently Pursued This Discovery, Which Seeks Documents in NHM's Exclusive Possession, Custody, or Control**

13. Plaintiff has pursued this discovery diligently for more than ten months:

(a) On November 5, 2025, Plaintiff served her First Request for Production on NHM, which contained similar requests for staffing, census, budget, regulatory-compliance, complaint, custodian documents, and written communications between Defendants regarding this subject matter. (R. Doc. 78-3.)

(b) On December 19, 2025, NHM served objections premised on its asserted non-party status to the Admission Agreement. (*Id.*)

(c) On July 17, 2026, Plaintiff served her Rule 30(b)(6) deposition notice and accompanying requests for production. (R. Doc. 78-4.)

(d) On July 31, 2026, NHM served objections and responses that asserted *new* objections not previously asserted and produced *none* of its own documents. (R. Doc. 78-5.)

(e) On August 4, 2026, Plaintiff took NHM's Rule 30(b)(6) deposition, at which NHM's designee confirmed the existence of the documents described above but produced none. (R. Doc. 78-6 at 27:16–28:22.)

(f) On August 5, 2026, I sent NHM's counsel a detailed meet-and-confer letter. (R. Doc. 78-7.)

(g) On August 12, 2026, at the Rule 37 conference, NHM's counsel "unequivocally confirmed" that NHM had no intention of producing any supplemental responses or documents. (R. Doc. 78-8.)

(h) On August 17, 2026, Plaintiff filed her Motion to Compel (R. Doc. 78), and on August 19, 2026, her reply memorandum (R. Doc. 86).

(i) After the Magistrate Judge denied the Motion to Compel (R. Doc. 98), Plaintiff filed her Motion for Review on September 10, 2026 (R. Doc. 115)—the same day NHM's Motion was entered on the docket.

14. The documents at issue are within NHM's exclusive possession, custody, or control and therefore cannot be obtained from any other source. They seek NHM-side records, including but not limited to NHM's budgets, "system-generated" reports sent to NHM on a daily basis (i.e., not from Marrero Healthcare and therefore not produced to date by Marrero Healthcare), the internal emails between NHM personnel on NHM's systems, and other such relevant documents that only NHM may possess. Marrero Healthcare's production does not include them, and the completeness of Marrero Healthcare's own production was belied by the Court's partial grant of Plaintiff's Motion for Contempt. (R.

Doc. 89.) Nor can Plaintiff obtain the substance of these documents through testimony: NHM's designee testified that he did not know what documents NHM had gathered or produced. (R. Doc. 78-6 at 48:3–17; 49:7–23.)

15. The documents can be produced promptly. NHM's designee testified that the budget exists and can be produced, that census and staffing reports can be generated from NHM's systems for any period, and that the relevant emails were exchanged in the ordinary course of business. (R. Doc. 78-6 at 15:5–17:15; 25:22–26:12; 31:9–16.) Plaintiff's Motion to Compel requested production within ten days of the Court's order. (R. Doc. 78.) Should the Court grant the Motion for Review, Plaintiff anticipates being able to file a complete opposition to NHM's Motion within seven (7) days after NHM completes its production.

**F. Prejudice to Plaintiff Absent a Stay**

16. Plaintiff's opposition to NHM's Motion is currently due September 22, 2026, and the Motion is noticed for submission on September 30, 2026. (R. Doc. 116.) NHM's proposed order would dismiss NHM "from this case, with prejudice." (R. Doc. 113-7.) If Plaintiff is required to oppose—and the Court to decide—NHM's Motion before the Court rules on the Motion for Review (R. Doc. 115), Plaintiff will be forced to respond on a record from which NHM has withheld the very evidence bearing on the dispositive question its Motion presents, and a ruling in NHM's favor could effectively moot the Motion for Review as to NHM. A brief stay pending the Court's ruling on the Motion for Review will avoid that result and permit NHM's Motion to be decided on a complete record.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 11, 2026, at New Orleans, Louisiana.

*/s/ Jordan M. Jeansonne*
JORDAN M. JEANSONNE