UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KATHY SHERROD ET AL. | CIVIL ACTION |
| VERSUS | NO. 25-1248 |
| NEXION HEALTH AT MARRERO, INC., ET AL. | SECTION "L" (3) |

**ORDER AND REASONS**

Before the Court is Defendants' Motion to Strike the Deposition of Michelle Johnson and for Other Relief (R. Doc. 90). Plaintiff filed a response in opposition (R. Doc. 97). Defendants filed a reply (R. Doc. 100). For the reasons below, the Motion (R. Doc. 90) is **GRANTED**.

## I. Background

Defendants are Nexion Health at Marrero, Inc. d/b/a Marrero Healthcare Center and Nexion Health Management, Inc.[1] Plaintiff's late husband resided at Marrero Healthcare Center from August 2023 to December 2023.[2] As summarized by the District Court, Plaintiff alleges the following:

> This is a wrongful death action brought by Sherrod against Defendants for their treatment of her deceased husband. Sherrod submits that her husband was a resident of Defendants' nursing home from August 2023 to December 2023. Mr. Sherrod required extensive assistance with physical activities such as bed mobility, toilet use, and bathing. At the time of his admission to the facility, Defendants were aware he suffered from certain conditions that placed him at a greater risk of developing

[1] R. Doc. 1, ¶ 16.
[2] *Id*. at ¶ 2.

> pressure injuries and infections, and notably, he had an existing pressure injury at his time of arrival.
>
> Sherrod avers that her husband suffered harm as a proximate result of Defendants' facility being wholly under-resourced. As a result of its lack of adequate staffing and funding, Mr. Sherrod's existing pressure injury worsened and he developed many new pressure injuries, including an injury to his heel that ultimately led to a below-the-knee amputation. The facility discharged Mr. Sherrod into hospice after he spent four months in their care, and he passed away a few weeks later. Sherrod now brings claims against Defendants, alleging that the harm and neglect they inflicted upon her husband substantially contributed to his hastened demise and wrongful death.
>
> Sherrod brought claims against Defendants for fraud. She asserts that Defendants concealed the truth and misrepresented the adequacy of their staff, all to induce Plaintiff and her husband into enrolling her husband as a resident. She specifically claims that Defendants did not maintain an adequate number of nursing staff despite being required to do so. Defendants should have staffed their facility based not only on the number of residents, but also on the individual needs of the residents, in accordance with applicable laws and regulations. By not doing so, the facility violated these federal and state laws that require nursing home facilities to provide sufficient staffing.[3]

Defendants removed this matter to this Court on the basis of diversity jurisdiction. Only Plaintiff's contractual fraud claim remains.[4]

The instant motion arises from the deposition of Michelle Johnson, a nurse who is the former assistant director of nursing (ADON) at Marrero Healthcare Center. The deposition proceeded at the noticed date and time of August 11, 2026, at 1:00 p.m., but defense counsel did not attend based on the reasonable and good faith belief that the deposition would be rescheduled.

[3] R. Doc. 15 at 1 (internal citations omitted).
[4] *Id.* at 18.

## II. Legal Standard

"The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). "The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence." Fed. R. Civ. P. 30(c)(1). "An objection must be stated concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). Conduct impermissible in the courtroom during the questioning of a witness is usually impermissible at a deposition. *S. La. Ethanol, L.L.C. v. Fireman's Fund Ins. Co.,* No. 1-2715, 2013 WL 1196604, at *7 (E.D. La. Mar. 22, 2013) (citing *Landers v. Kevin Gros Offshore, L.L.C.*, No. 08-1293, 2009 WL 2046587, at *1, *4 (E.D. La. July 13, 2009) ("[Counsel] repeatedly failed to conduct his examination of Landers as he would at the trial and denied him the same rights and privileges due a witness testifying in court at a trial. Sanctions will be imposed.")). "In trying to solve problems of misconduct during depositions, Rule 30(c) sweeps broadly." § 2113 Conduct of Examination, 8A Fed. Prac. & Proc. Civ. § 2113 (3d ed.). "In general, counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer." *Amendments to Federal Rules of Civil Procedure*, 146 F.R.D. 401, 666 (U.S. 1993). Leading questions are generally impermissible on direct examination so as to "guard against the risk of improper suggestion." *Sec. & Exch. Comm'n v. Goldstone*, 317 F.R.D. 147, 165 (D. N.M. 2016) (citing *Ellis v. City of Chicago*, 667 F.2d 606, 612 (7th Cir. 1981)).

"Because depositions take place in law offices rather than courtrooms, adherence to professional standards is vital, for the judge has no direct means of control." *Redwood v. Dobson*, 476 F.3d 462, 469–70 (7th Cir. 2007). Abusive, profane, and pugnacious behavior in a deposition "degrades the legal profession and mocks the search for truth that is at the heart of the litigation process." *Carroll v. Jacques Admiralty L. Firm, P.C.*, 110 F.3d 290, 294 (5th Cir. 1997). "While isolated acts of discourtesy or loss of temper can be expected . . . systematic and deliberate abuses. . . cannot go unsanctioned as they are destructive of the very fabric which holds together the process of pretrial discovery—cooperative exchange of information without the need for constant court intervention." *Freeman v. Schointuck*, 192 F.R.D. 187, 189 (D. Md. 2000).

Courts apply Rule 30's prospective remedy broadly. *S. La. Ethanol, L.L.C. v. Fireman's Fund Ins. Co.*, 2013 WL 1196604, at *8; *see also Soule v. RSC Equip. Rental, Inc.*, No. 11-2022, 2012 WL 5060059, at *3. (E.D. La. Oct. 18, 2012) (terminating a deposition when an attorney yelled, pounded on the table, used confrontational or argumentative language, accused a witness of lying or providing false or untrue testimony, and disrupted witness testimony). Rule 30(d)(2) does not expressly set forth a list of available sanctions. *S. La. Ethanol, L.L.C.*, 2013 WL 1196604, at *8 (citing *Glick v. Molloy*, 2013 WL 140100, at *2 (D. Mont. Jan. 10, 2013)). Payment of attorney's fees for the deposition of a non-party can be an appropriate sanction under 30(d)(2). *Howell v. Avante Services, LLC*, No. 12-293, 2013 WL 824715, at *5 (E.D. La. Mar. 6, 2013).

## III. Analysis

Defendants request that (1) Michelle Johnson's deposition be stricken in its entirety, and (2) the Court award Defendants their expenses and attorney's fees associated with bringing the present Motion and with retaking Johnson's deposition.[5]

Although Plaintiff noticed Johnson's deposition for August 11 at 1:00 p.m., Defendants' understanding was that it would not occur at that date and time. The relevant timeline is as follows.

July 27, 2026: Plaintiff's counsel, Jordan Jeansonne, sent Defendants a letter scheduling a meet-and-confer telephone call on July 29, 2026 to discuss deposing six witnesses, including Johnson.[6]

July 28, 2026: Plaintiff's counsel, Matthew Coman, unilaterally noticed Johnson's deposition for August 11, 2026 (the date of the then-existing discovery deadline).[7] Plaintiff later described this notice as "for the purpose of ensuring [Johnson's deposition] would be completed by the discovery deadline, and to be moved if necessary should [defense counsel] provide an alternative date in the July 29 meet-and-confer conference."[8] That same day, defense counsel advised Coman (cc'ing Jeansonne) that he was willing to provide mutually-agreeable deposition dates "if you are willing to participate in the discussion. If not, I guess we will need to take it up with the court."[9]

---

[5] R. Doc. 90-1 at 1-2.
[6] R. Doc. 99-1 at 12.
[7] R. Doc. 97 at 3, citing R. Doc. 71-9 at 1, 8-9.
[8] R. Doc. 97 at 3 (characterization in Plaintiff's briefing).
[9] *Id*. at 3-4; R. Doc. 72-1 at 2; R. Doc. 72-4 at 1.

July 29, 2026: In the morning, Plaintiff's counsel, Stephen Garcia, emailed Defendants: "As always, please feel free to call me in order to hopefully amicably resolve such scheduling issues to avoid wasting the Court's time and efforts on such standard items."[10] The scheduled meet-and-confer call occurred later that day, and counsel discussed potential deposition dates for the six witnesses, including Johnson.[11] Defense counsel noted that August 11 remained available.[12] Plaintiff's counsel did not mention his putative belief that Johnson's deposition remained scheduled for that day.[13] The parties discussed jointly moving for an extension of the August 11 discovery deadline which, if granted, "would moot Plaintiff's un[i]l[a]terally-noticed depositions."[14]

August 3, 2026: Another conference was held relative to the depositions. Jeansonne indicated he would attempt to resolve the scheduling issues, but he could not agree to any dates without Coman's approval.[15]

August 5, 2026: Defendants emailed Plaintiff about Marrero Healthcare administrator Philip Sweeney's deposition availability on August 11 and to discuss rescheduling all other depositions (including Johnson's).[16] Plaintiff never replied nor otherwise indicated that the Johnson deposition remained scheduled for August 11.[17]

---

[10] R. Doc. 72-5 at 1.
[11] R. Doc. 97 at 3-4.
[12] *Id.* at 4.
[13] *Id.*
[14] *Id.* (characterization by Plaintiff in subsequent briefing).
[15] R. Doc. 72-1 at 3.
[16] R. Doc. 99-1 at 20.
[17] R. Doc. 99 at 4.

August 6, 2026: First thing in the morning, Defendants emailed Plaintiff to ask whether Philip Sweeney would be deposed that day.[18] Plaintiff's counsel received the email and decided to ignore the question.[19] Plaintiff's counsel appeared for Sweeney's deposition. Neither Sweeney nor defense counsel was present. That same day, Defendants filed a motion to quash several depositions, including Johnson's.[20]

August 11, 2026: Plaintiff filed an unopposed motion to continue the discovery deadline.[21] In the attached exhibits, Plaintiff manually highlighted defense counsel's statement from August 5, 2026: "If you agree to the joint motion to extend the deadlines, we can begin to reschedule all the other depositions [including Johnson's]."[22] The same day that Plaintiff filed her unopposed motion to extend the discovery deadline, however, Plaintiff's counsel deposed Johnson. Defense counsel were not present. Plaintiff's counsel made no effort to notify them that the deposition was proceeding.[23] Even after the deposition, and despite the pending motion to amend scheduling order (which emphasized the parties' understanding that the unilaterally-noticed depositions would be re-scheduled), Plaintiff did not notify Defendants that she had already deposed Johnson.

---

[18] R. Doc. 99-1 at 23.
[19] Plaintiff's counsel do not deny that they received the email, but explain that they did not respond because Plaintiff "had already repeatedly and unambiguously confirmed she intended to proceed with the deposition." R. Doc. 99 at 4.
[20] R. Doc. 72.
[21] R. Doc. 75. The motion was not filed more quickly after August 11 because the parties engaged in some minor back-and-forth as to the issues to include in the motion.
[22] R. Doc. 75-2 at 2.
[23] R. Doc. 97 at 5.

August 17, 2026: Defendants learned that Plaintiff had deposed Johnson on August 11, 2026 through Plaintiff's Response to Defendants' Motion to Quash (R. Doc. 80), in which Plaintiff stated that the deposition occurred due to Defendants not providing alternative availability.[24] The instant motion followed.

As set forth above, there was some discussion and negotiation of deposition dates, including Johnson's. Although Plaintiff noticed[25] Johnson's deposition for August 11, this was prior to a meet-and-confer telephone call regarding the deposition-date dispute, prior to subsequent communications that strongly implied that the Johnson deposition would not remain scheduled for August 11, and prior to communications about a joint motion to extend the discovery deadline to ensure that depositions (including Johnson's) could be rescheduled for later dates.

Plaintiff suggests that Defendants "cho[se] to boycott the deposition" of Johnson on August 11, 2026.[26] The suggestion that defense counsel intentionally chose not to attend Johnson's deposition is specious. Defendants previously objected to and litigated the potential issue of Plaintiff's counsel communicating with former employees without the presence of defense counsel. The record is clear, moreover, that the parties agreed to move to continue the discovery deadline so that the unilaterally-set depositions (which included Johnson's) could be rescheduled. Given these circumstances, Defendants acted reasonably and in good faith in concluding that the August 11, 2026 deposition of Johnson was not going forward. On the specific

[24] R. Doc. 80 at 2; R. Doc. 87 at 1.
[25] A deposition subpoena to Johnson accompanied the notice.
[26] R. Doc. 97 at 10.

facts of this case, Plaintiff's counsel acted unprofessionally[27] in failing to (1) contact defense counsel once it became apparent that defense counsel believed the August 11 deposition was not going forward; or (2) promptly notify defense counsel after the deposition had been completed.

The Court need not reach whether the above facts would be sufficient to grant Defendants' motion because the manner in which the deposition proceeded is of even greater concern. Plaintiff's counsel, Garcia, deposed (via Zoom) Johnson, an unrepresented nurse and nonlawyer. Garcia's co-counsel, Coman, was also present.[28] At first, Garcia was friendly[29] and polite.[30] As the questioning continued, however, Garcia took an increasingly more aggressive approach:

> Q. It clearly says the admission date is 11/10/23 which is three months later. You would agree that November is three months after August, wouldn't you?[31]
>
> Q. [W]e are going to agree that you were not qualified to be the wound care nurse . . . correct?[32]

When Garcia found Johnson's testimony frustrating or unhelpful to Plaintiff's case, he cursed at her: "Ma'am, I can tell you, you didn't explain a damn thing. I don't have any clue what you're saying."[33] He also repeatedly insulted her credibility. For

---

[27] The present motion does not allege noncompliance with the Louisiana Rules of Professional Conduct nor expressly seek revocation of Garcia's pro hac vice status, and the instant ruling does not encompass any such issues.
[28] Coman did not question Johnson.
[29] R. Doc. 101-1 at 6.
[30] *Id.* at 5.
[31] *Id.* at 73.
[32] *Id.* at 88; *see also id.* (Johnson responded to the question with: "I'm always qualified. I'm an RN. Yes, I was qualified.").
[33] *Id.* at 73.

example, Garcia told Johnson: “I heard what you said, it’s just not—it’s frankly just not believable. I don’t care what you want to say. If you want to say things that aren’t believable on the record, I actually appreciate that because then I get to use it at trial.”[34]

After Johnson testified as to her understanding that state law gave her a seven-day deadline by which to execute a particular form, Garcia ridiculed her putative ignorance of the law:

> Q. My question was, which day was the assessment, September 11th or September 14th?
>
> A. I’m not sure, but I have seven days to sign it from state law. I have seven days to complete that paper.
>
> Q. Ma'am, I think you have gone to the wrong law school. No, you don’t.
>
> A. I do, sir. I have seven days.
>
> Q. Excuse me, not only does state law not allow it, your own policies and procedures don’t allow it, so I would urge you to perhaps study a little harder. Let me show you Trial Exhibit 1, 13 page 782.[35]

Garcia also previewed to Johnson the testimony that he wished to elicit. For example, during a colloquy about the number of days that staffing was allegedly below the requisite ratio, Garcia asked his colleague (Coman) for confirmation of the underlying factual point: “Did you know that … was it 65 occasions, Matt? Was it 65 occasions?” After Coman responded “Sixty - -” Garcia continued to “question” Johnson as to this factual point.[36]

---

[34] *Id*. at 76-77.
[35] *Id*. at 81.
[36] *Id*. at 47.

> Q. . . . Now you know that there is a bare minimum numeric nursing hours per patient day required at the skilling nursing facility in Louisiana at 2.35, correct?
>
> A. I don't know numbers what' [sic] you're talking about.
>
> Q. So no one ever – strike that. You were not aware that for 64 days . . .Marrero was below the minimum numeric ratio allowed by law, 2.35 nursing hours per patient day?
>
> A. I don't know that at all.
>
> Q. Really, nobody ever told you that?
>
> A. No. They told us what they wanted us to know….I don't remember ever getting into finding out about the numbers, there was so many, that we were so many numbers behind or whatever you just said. I never remember hearing that.
>
> Q. I'm not talking about every meeting. I'm talking about you having testified under oath that you were responsible for the staffing of CNAS when you were the ADON in 2023. So I'm asking in that function, were you not aware that for 64 days of this eight month period, your facility did not even have the 2.35 nursing hours per patient day required by Louisiana law?
>
> A. I was not aware of that.

When Johnson pushed back on Garcia for "putting words in my mouth," he responded sharply and suggested other witnesses could disprove her testimony.[37]

> Q. . . . . When you were at Marrero, you had CNAs tell you they could not complete their job duties, correct?
>
> A. No, haven't had nobody told me that.
>
> Q. They never told you were understaffed, the CNAs, never at Marrero, that's your testimony?
>
> A. No, I'm not saying that. They never told me they couldn't fulfill their duties. It was just a lot. They felt it was a lot sometimes.

---

[37] *Id.* at 55.

Q. So CNAs at Marrero told you the facility was short-staffed, correct?

A. I'm not going to let you put words in my mouth. I just said what you said.

Q. Ma'am, all you have to do is answer the question. I'm not trying to put words in your mouth.

A. Okay. I mean—

Q. Excuse me, ma'am. Stop speaking over me. Every time you get caught, you kind of speak over me.

A. Sir, this is my personality. I'm sorry. Just let me know. I didn't realize that.

Q. You just did it again. You just did it again. Ma'am, you said, "I hear that all the time," quote/unquote [sic]. I was asking about Marrero.

A. Okay. Not at Marrero then. Not at Marrero.

Q. Ma'am please. Let's make sure and be very careful about this answer. Because we have interviewed people and we have statements from people and they say things. And so be very accurate about the testimony you're about to give . . . .[38]

Soon thereafter, Garcia responded to one of Johnson's answers (relative to an expected increase in staffing) with: "You just said under oath that there were more [staff] and I'm here to tell you that there weren't. I'm asking how, do you reconcile those two things?"[39]

Garcia also made repeated threats to "go to the court and ask the judge to order you to my office," "[i]f you speak over me, I have no choice but to ask the judge to order you to my office," and "we will go to the judge."[40] Garcia is a California attorney

---

[38] *Id*. at 55-59.
[39] *Id*. at 59.
[40] *Id*. at 18, 27, 76.

with an office in Long Beach who has been admitted *pro hac vice* in this case. Plainly, the Court would not require nonparty Johnson to go to his office. Even if he were a Louisiana attorney or referring to a local office, however, these statements would be problematic because they impermissibly threatened an unrepresented and non-attorney deponent with a patently implausible (on this record[41]) exercise of the Court's authority.

As the deposition continued, Garcia increasingly cut off Johnson's testimony and suggested his desired narrative in its stead. Thus, for example, there are entire pages of the transcript that consist of Johnson answering Garcia's "questions"[42] with "[c]orrect,"[43] "[y]es," and "[u]h-huh."[44] Johnson's final fourteen responses consisted exclusively of no more than "[c]orrect," "[c]orrect, that's what I got," "[y]es," "[c]ould, yes," and "[t]hat's right."[45]

The remarks set forth above illustrate Garcia's increasingly hostile and coercive behavior. Because defense counsel was not present, and because Coman opted not to intervene by, e.g., suggesting a recess, the behavior continued unchecked.

---

[41] There are instances in which ordering an in-person deposition is warranted. This is not one of them. If the Court had been contacted and made aware of the treatment to which Johnson was subject during her deposition, the Court would have terminated the deposition immediately.

[42] *See, e.g.*, *id.* at 67 ("At times when you were the ADON, the CNAs complained about a lack of staff in the building, correct?" . . . . You shared that information with the administrator, Mr. Sweeney, and with the director of nursing as well, correct?").

[43] *Id.* at 50. To be clear, this goes beyond an allowable cross examination of a hostile witness (and no one has argued that Johnson was a hostile witness).

[44] *Id.* at 34–38.

[45] *Id.* at 90–92.

Plaintiff's counsel took advantage of the opportunity for a one-sided deposition and, in doing so, abused the discovery process. *See Mitnor Corp. v. Club Condominiums*, 339 F.R.D. 312, 316 (N.D. Fla. 2021) ("Unfortunately, some counsel use the lack of judicial oversight inherent in depositions to obstruct the proceedings or to intimidate parties, witnesses, or counsel.") (citing *Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 160 F.R.D. 98, 99 (S.D. Ohio 1995)). "[T]he witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record. It is the witness—not the lawyer—who is the witness." *Hall v. Clifton Precision*, 150 F.R.D. 525, 527 (E.D. Pa. 1993). The numerous procedural and substantive flaws in Johnson's deposition bely this fundamental premise.

The Judges of the U.S. District Court for the Eastern District of Louisiana adopted the Louisiana State Bar Association Code of Professionalism on August 4, 1999. That Code sets forth fifteen principles:

- My word is my bond.
- I will conduct myself with honesty, dignity, civility, courtesy and fairness and will not engage in any demeaning or derogatory actions or commentary toward others.
- I will not knowingly make statements of fact or law that are untrue or misleading and I will clearly identify for other counsel changes I have made in documents submitted to me.
- I will be punctual in my communication with clients, other counsel and the court. I will honor scheduled appearances and will cooperate with other counsel in all respects.
- I will allow counsel fair opportunity to respond and will grant reasonable requests for extensions of time.

- I will not abuse or misuse the law, its procedures or the participants in the judicial process.

- I will cooperate with counsel and the court to reduce the cost of litigation and will not file or oppose pleadings, conduct discovery or utilize any course of conduct for the purpose of undue delay or harassment of any other counsel or party.

- I will not engage in personal attacks on other counsel or the court or use the threat of sanctions as a litigation tactic.

- I will support my profession's efforts to enforce its disciplinary rules and will not make unfounded allegations of unethical conduct about other counsel.

- I will work to protect and improve the image of the legal profession in the eyes of the public.

- I will endeavor to improve our system of justice.

- I will use technology, including social media, responsibly. My words and actions, no matter how conveyed, should reflect the professionalism expected of me as a lawyer.

- I will seek opportunities to be of service to the bench and bar and assist those who cannot afford legal help.

- I will be supportive of new members in the profession.

- I will stay informed about changes in the law, communication, and technology which affect the practice of law.

Plaintiff's counsel's conduct in this case implicates many of these principles.

It can be difficult to detect tone or demeanor from a cold record. Not so here. The transcript shows that Johnson remained polite, patient, and even apologetic for the duration of the deposition. By contrast, Plaintiff's counsel's behavior was grossly unprofessional under the standards set forth in the Code of Professionalism and the jurisprudence discussed above. The transcript does not suggest Plaintiff's counsel

ever apologized to Johnson for subjecting her to cursing, insults, and ridicule. And even in her present briefing, Plaintiff expresses no remorse nor regret for the conduct of her counsel.

"When there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). Rule 30 is "up to the task" of imposing an appropriate consequence for Plaintiff counsel's lack of professionalism. *See id.* While the Court reserves the authority to exercise its inherent power to sanction, including for reasons that overlap with those discussed herein, it will not do so at this stage and on this record.

## IV. Conclusion

For the foregoing reasons, Johnson's deposition may not be used for any purpose unless the District Court provides express authorization. The unavailability of a usable deposition supports allowing the parties a second opportunity to depose Johnson (provided they do so timely). A second deposition can remedy the procedural and substantive problems that occurred during the first deposition. Pursuant to Rule 30(d)(2), Defendants are entitled to their reasonable fees and expenses incurred in connection with the instant motion.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Quash (R. Doc. 90) is **GRANTED**. The August 11, 2026 deposition of Michelle Johnson shall not be used for any purpose absent express authorization from the District Court.

**IT IS FURTHER ORDERED** that Defendants are awarded the reasonable fees and costs associated with bringing forth their Motion to Quash (R. Doc. 90), including without limitation the Supplemental Memorandum in Support (R. Doc. 100). If the parties cannot agree on an amount, Defendants may file a motion seeking such fees and costs within 21 days. To the extent Plaintiff opposes the award or its amount, such arguments can be presented in response to Defendants' motion.

New Orleans, Louisiana, this 23rd day of September, 2026.

EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE