**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **KATHY SHERROD, SURVIVOR OF SHELDON SHERROD** | * | **CIVIL ACTION NO. 25-1248** |
| | * | **JUDGE ELDON E. FALLON** |
| **VERSUS** | * | **MAGISTRATE JUDGE EVA J. DOSSIER** |
| **NEXION HEALTH AT MARRERO, INC. D/B/A MARRERO HEALTHCARE CENTER AND NEXION HEALTH MANAGEMENT, INC.** | * | |
| | * | |

* * * * * * *

**ORDER & REASONS**

Before the Court is a *Daubert* Motion in Limine filed by Plaintiff Kathy Sherrod seeking to limit the testimony of Defendants' expert witness Leon LeBreton. R. Doc. 111. Defendants Nexion Health at Marrero, inc., d/b/a Marrero Healthcare Center ("Marrero") and Nexion Health Management Inc. ("Nexion") (collectively, "Defendants") oppose the motions. R. Doc. 144. Plaintiff filed a reply memorandum. R. Doc. 146. Considering the record, briefing, and applicable law, the Court now rules as follows.

**I. BACKGROUND**

Plaintiff Kathy Sherrod is the surviving spouse of Sheldon Sherrod, a former resident of Marrero Healthcare Center (the "Facility"). At all relevant times, the Facility was owned and operated by Marrero and managed by Nexion. Sherrod avers that the Facility operated in violation of Louisiana and federal rules, laws, and regulations governing the minimum staffing necessary to adequately operate a nursing home and provide sufficient services to meet the needs of the resident population. Sherrod maintains that during the process of Mr. Sherrod's admission, Defendants knowingly misrepresented and concealed from Mr. and Mrs. Sherrod their compliance with statutory and regulatory requirements to induce Mr. Sherrod into entering into an admission agreement and becoming a resident of the Facility. Mr. Sherrod resided at the Facility for a period

of roughly five months, from August 22, 2023, to December 22, 2023. Sherrod maintains that Mr. Sherrod received inadequate care during his residency, which resulted in the advancement of his medical ailments and premature death. Sherrod proceeds in this action against Nexion and Marrero on a fraud claim pursuant to La. Civ. Code art. 1953.

## II. LEGAL STANDARD

District courts have discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 of the Federal Rules of Evidence requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." The Supreme Court extended *Daubert*'s applicability to experts who testify based on technical and specialized knowledge, noting that *Daubert*'s gatekeeping requirement to ensure the reliability and relevancy of expert testimony "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Rule 702 of the Federal Rules of Evidence sets forth the framework governing the admissibility of expert testimony. "The object of Rule 702 is to protect juries from unreliable and irrelevant expert testimony." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

First, Rule 702 requires that an expert must be properly qualified. "[G]enerally, however, if there is some reasonable indication of qualifications, the court may admit the expert's testimony and then leave to the jury the extent of those qualifications." *Urda v. Valmont Indus., Inc.*, 561 F. Supp. 3d 632, 638 (M.D. La. 2021).

Second, an expert's testimony must be reliable. The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93; *Kumho Tire*, 526 U.S. at 152–53. In *Daubert*, the Supreme Court listed several non-exclusive factors relevant to assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Daubert*, 509 U.S. at 593–95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Third, expert testimony must also be relevant. Testimony is relevant if the expert's reasoning and methodology "fits" the facts of the case and the testimony will assist the trier of fact to understand the evidence. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003).

## III. DISCUSSION

Plaintiff asks the Court to limit Mr. LeBreton's testimony to the extent that he be rejected as an expert as to the following categories of evidence:

> 1. the acuity or need level of residents at Marrero Healthcare Center ("Marrero Healthcare); 2. whether Defendants provided staffing levels sufficient to meet the acuity level of Marrero Healthcare in compliance with regulatory requirements; 3. whether at any time Marrero Healthcare had a staffing level above 2.6 hours per patient day as called for by its own facility assessment; 4. any legal opinion; 5. the significance of Marrero Healthcare's ratings under the Centers for Medicare & Medicare Services' Five-Star Rating System; and 6. Defendants' respective responsibility for the operation and staffing of Marrero Healthcare.

R. Doc. 111 at 1. Defendants argue that this Court should accept Mr. LeBreton as an expert in these categories because he is a licensed accountant and has served as chief financial officer and director of senior living facilities. R. Doc. 144 at 1–2. However, at Mr. LeBreton's deposition, he was asked repeatedly if he had any experience or qualifications whatsoever that would allow him to opine on these issues at an expert level. R. Doc. 111-4 at 6–14. Each time, Mr. LeBreton answered plainly, "No." *Id.* Mr. LeBreton disclaimed experience in any relevant vocation, as in the following exchange at his deposition:

> Q: Mr. LeBreton, you are a licensed administrator of skilled nursing facilities?
> A: No.
> Q: Certified nursing assistant?
> A: No.
> Q: Registered nurse?
> A: No.
> Q: Licensed vocational nurse?
> A: No.
> Q: You've served as the administrator of a skilled nursing facility?
> A: No.
> Q: You've served as a director [of] nursing at a skilled nursing facility?
> A: No.
> Q: You've assessed the acuity of residents so that their medical needs can be met?
> A: No.
> Q: In fact, you have absolutely no qualifications whatsoever to do so. Correct?
> A: Correct.

*Id.* at 6–7. Moreover, Mr. LeBreton admitted he had "no expertise upon which to determine the acuity of the residents of any skilled nursing facility in the United States such as to comply with federal regulations to ensure the sufficiency of staff" and no "qualifications that would empower [him] to be an expert to determine the acuity or need level of residents in a skilled nursing facility for their medical needs." *Id.* at 7–8.

Defendants' assertions as to the qualifications Mr. LeBreton does possess do nothing to cure the obvious and admitted inadequacy of Mr. LeBreton's qualifications as an expert in the identified categories. Accordingly, the Court will grant Plaintiff's motion and limit Mr. LeBreton from testifying at trial as to these issues.

**IV. CONCLUSION**

For the foregoing reasons;

**IT IS ORDERED** that Plaintiff's Motion, R. Doc. 111, is hereby **GRANTED**.

New Orleans, Louisiana, this 8th day of October, 2026.

Eldon E. Fallon

United States District Judge