**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **KATHY SHERROD, SURVIVOR OF SHELDON SHERROD** | * | **CIVIL ACTION NO. 25-1248** |
| | * | **JUDGE ELDON E. FALLON** |
| **VERSUS** | | |
| | * | **MAGISTRATE JUDGE EVA J. DOSSIER** |
| **NEXION HEALTH AT MARRERO, INC. D/B/A MARRERO HEALTHCARE CENTER AND NEXION HEALTH MANAGEMENT, INC.** | * | |
| | * | |

*** * * * * * ***

**ORDER & REASONS**

Before the Court is a Motion for Summary Judgment filed by Nexion Health Management, Inc. and Nexion Health at Marrero, Inc. d/b/a Marrero Healthcare Center (collectively, "Defendants"). R. Doc. 114. Plaintiff Kathy Sherrod opposes the Motion. R. Doc. 133. Defendants replied. R. Doc. 153. After considering the record, briefing, and applicable law, the Court rules as follows:

## I. BACKGROUND

Plaintiff is the surviving spouse of Sheldon Sherrod, a former resident of Marrero Healthcare Center, a nursing home owned and operated by Defendant Marrero Healthcare Center and managed by Defendant Nexion Health Management. R. Doc. 1-1 at 1–2. On August 22, 2023, Plaintiff visited Marrero Healthcare Center to inquire about Mr. Sherrod becoming a resident at the facility. R. Doc. 133-4 at 22–26, 33. At the time, Mr. Sherrod was experiencing difficulties with breathing and balance, and Plaintiff was no longer able to take care of him at home. R. Doc. 133-4 at 18. Plaintiff spoke with two facility representatives, including Marrero Healthcare's admissions coordinator Brandy Bush. R. Doc. 133-4 at 24–25. Plaintiff represents that during a conversation, Ms. Bush told Plaintiff that Marrero Healthcare Center was "very well staffed." R. Doc. 133 at 15. Plaintiff registered Mr. Sherrod as a resident by signing a Nursing Facility

Admission and Financial Agreement and a Statement of Resident Rights form on Mr. Sherrod's behalf. R. Doc. 133-3. Mr. Sherrod was transported from a local hospital to Marreo Healthcare Center later that day. R. Doc. 133-4 at 23–24.

Mr. Sherrod resided at Marrero Healthcare Center for a period of four months, from August 22, 2023, to December 22, 2023. R. Doc. 1-1 at 1. Plaintiff avers that the facility was understaffed both on the day of Mr. Sherrod's admission and throughout his residency. R. Doc. 133 at 24. Plaintiff maintains that Mr. Sherrod received inadequate care due to the staffing shortage, and as a result, experienced a marked and continuous deterioration in his physical condition, including the development or exacerbation of pressure injuries, skin lesions, deep tissue injuries, and an infection. R. Doc. 133-1 at 4–7.[1] In November 2023, Mr. Sherrod underwent a below-the-knee amputation after the heel on his right foot developed gangrene. R. Doc. 133-1 at 8. Mr. Sherrod was discharged from Marrero Healthcare Center to hospice care on December 22, 2023, and died on January 10, 2024. *Id.* at 8.

Plaintiff now proceeds against Defendants on a single claim of fraud pursuant to La. Civ. Code art. 1953. *See* R. Doc. 15. Plaintiff alleges that during the process of Mr. Sherrod's admission into Marrero Healthcare Center, Defendants knowingly misrepresented their compliance with and intentionally concealed their violation of state and federal laws governing minimum staffing requirements at nursing homes. R. Doc. 133 at 2. Plaintiff alleges Defendants carried out this fraud in two main ways. First, Plaintiff maintains Ms. Bush's statement that the facility was "very well staffed" was false at the time it was made and thus constituted fraud. *Id.* at 15. Second, Plaintiff maintains that Defendants committed fraud by silence when they failed to disclose the facility's staffing shortage and violation of staffing laws. *Id.* at 15. Plaintiff represents that had she known

---

[1] Plaintiff avers that Mr. Sherrod's only injury at the time of his admission into Marrero Healthcare Center was a minor skin wound.

the truth about the staffing shortage, she would not have signed the admission agreement and Mr. Sherrod would never have become a resident at the facility. *Id.* at 2. Plaintiff seeks damages resulting from Defendants' fraud, as well as attorney's fees. R. Doc. 1-1 at 11.

## II. PRESENT MOTION

Defendants move for summary judgment on three grounds. *Id.* First, Defendants maintain that the conduct Plaintiff alleges constitutes medical malpractice under the Louisiana Medical Malpractice Act ("LMMA"). R. Doc. 114-1 at 8. To this end, Defendants rely on the recent Louisiana Supreme Court decision *Broden v. Priority Management Group, L.L.C.*, 2025-01651 (La. 02/12/26), 427 So. 3d 726, in which the court held an administrative negligence claim which similarly involved nursing home understaffing allegations fell within the scope of the LMMA. *Id.* at 7. Second, Defendants argue that Plaintiff's fraud claim fails as a matter of law because fraud can only be based on a misstatement of a present rather than future fact, and the core of Plaintiff's claim concerns representations that Marrero Healthcare Center *would* provide adequate staff during Mr. Sherrod's residency. *Id.* at 9–10. For this position, Defendants cite the Louisiana Second Circuit Court of Appeal's decision in *Bennett v. Pathway Management of Louisiana, LLC*, 56,943, 2026 WL 2035869 (La. App. 2 Cir. 7/15/26), and its remark that "fraud cannot be predicated on unfulfilled promises or statements as to future events." *Id.* at 10. Finally, Defendants maintain there is no record evidence showing that Defendants intentionally misled the Sherrods with respect to the staffing levels at Marrero Healthcare Center. *Id.* at 11.

Plaintiff opposes the motion. R. Doc. 133. First, Plaintiff maintains that, as a matter of law, her claim falls outside the LMMA because fraud under art. 1953 is neither an unintentional tort nor a breach of contract claim. *Id.* at 9–10. Plaintiff further argues that the Louisiana Supreme Court's decision in *Broden* is inapplicable because it concerned administrative negligence. *Id.* at

7. Second, Plaintiff maintains that her fraud claim is predicated on the misrepresentation of a present, rather than a future fact, namely Defendants' representations that Marrero Healthcare Center was adequately staffed at the time Mr. Sherrod was admitted to the facility. *Id.* at 15. Finally, Plaintiff contends that record evidence creates a genuine factual dispute as to Defendants' intent to deceive Plaintiff, precluding summary judgment. *Id.* at 18–25.

## III. LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific material facts showing there is a genuine dispute for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A fact is "material" if its resolution in favor of one party may affect the outcome of the case. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993).

## IV. DISCUSSION

As mentioned, Plaintiff proceeds on a single claim: contractual fraud pursuant to La. Civ. Code art. 1953. Before addressing the issues presented, a brief discussion on the nature of this claim is helpful.

Fraud in Louisiana comes in two forms: contractual fraud under art. 1953 and tort (or "delictual") fraud pursuant to La. Civ. Code art. 2315. *Griffin v. BSFI W. E & P, Inc.*, 2000-2122, p. 8 (La. App. 1 Cir. 2/15/02), 812 So.2d 726, 734. Art. 1953 fraud is at issue here.

Art. 1953 fraud concerns fraud in the formation of a contract and is considered a "vice to consent," operating as a ground to seek nullity of a contract. La. Civ. Code art. 1948 ("Consent may be vitiated by . . . fraud . . .."); *see also Stutts v. Melton*, 2013-0557, p. 9 (La. 10/15/13), 130 So.3d 808, 814 (art. 1953 "[f]raud vitiates consent"); *Robinson v. Wayne & Beverly Papania & Pyrenees Investments, LLC*, 2015-1354, pp. 8–9 (La. App. 1 Cir. 10/31/16), 207 So.3d 566, 574, *writ denied sub nom. Robinson v. Papania*, 2016-2113 (La. 3/13/17), 216 So.3d 808 (a contract declared null through fraud "is deemed never to have existed").[2] Art. 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."

Art. 1953 fraud is not breach of contract: breach of contract and art. 1953 fraud are distinct causes of action, grounded in separate Code articles, with different elements. *DA Exterminating Co., Inc. v. Discon*, 24-116, p. 10 (La. App. 5 Cir. 10/30/24), 398 So.3d 1239, 1248 (distinguishing between fraud and breach of contract); *Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 575 F.3d 483, 490 (5th Cir. 2009) ("A breach of promise, standing alone, is not enough for a fraud claim."). The nature of the wrongdoing in an art. 1953 fraud action is the fraudster's specific intent to deceive in order to gain an advantage over another, *see Sanga v. Perdomo*, 14-609, p. 6 (La. App. 5 Cir. 12/30/14), 167 So.3d 818, 821; the nature of the wrong in a breach of contract claim is underperformance. Fraud provides grounds for immediate relief. *Stutts*, 130 So.3d at 814. The cause of action does not depend on a party having ever breached an agreement.

---

[2] *See generally*, Saul Litvinoff, *Vices of Consent, Error, Fraud, Duress and an Epilogue on Lesion*, 50 LA. L. REV. 1, 13 (1989).

**A. Plaintiff's Art. 1953 Fraud Claim under Louisiana Substantive Law is Not "Malpractice" under LMMA.**

The first issue presented is whether Plaintiff's fraud claim pursuant to art. 1953 falls within the scope of the Louisiana Medical Malpractice Act ("LMMA"). The Court previously addressed this question in resolving a motion to dismiss and concluded that Plaintiff's art. 1953 fraud allegations fall outside the purview of the LMMA. The Court now revisits this issue in light of the recent Louisiana Supreme Court decision *Broden v. Priority Management Group*.

The LMMA applies only to "malpractice," *Coleman v. Deno*, 2001-1517, p. 16 (La. 1/25/02), 813 So. 2d 303, 315, which the Act defines as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient . . . ." La. R.S. 40:1231.1(A)(13). In *Coleman v. Deno*, the Louisiana Supreme Court set forth six factors to help determine whether a qualified healthcare provider's conduct qualifies as "malpractice" under the Act:

> (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;
> (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
> (3) whether the pertinent act or omission involved assessment of the patient's condition;
> (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;
> (5) whether the injury would have occurred if the patient had not sought treatment;
> (6) whether the tort alleged was intentional.

813 So. 2d at 315–16. Intentional torts are not subject to the LMMA. *Swain v. Lombard*, 55,377, p. 4 (La. App. 2 Cir. 1/10/24), 378 So. 3d 909, 913 ("Intentional torts . . . are excluded from coverage by the LMMA.").[3] As a result, when a plaintiff alleges intentional misconduct,

[3] *See also Sewell v. Doctors Hospital*, 600 So.2d 577, 578 (La. 1992); *McDowell v. Garden Ct. Healthcare, L.L.C.*, 54,645, p. 7 (La. App. 2 Cir. 8/10/22), 345 So. 3d 506, 511, *writ denied*, 2022-01364 (La. 11/16/22), 349 So. 3d 999; *Descant v. Adm'rs of Tulane Educ. Fund*, 93-3098, p. 5 (La. 7/5/94), 639 So. 2d 246, 250; *LaCoste v. Pendleton Methodist Hosp., L.L.C.*, 2007-0008, p. 6 (La. 9/5/07), 966 So. 2d 519, 524.

courts often start with the sixth *Coleman* factor: "whether the tort alleged was intentional." *See Riley v. Paramount Healthcare Consultants, LLC*, 2024-127, p. 5 (La. App. 3 Cir. 10/30/24), 396 So. 3d 470, 476; *Andrews v. Nexion Health Mgmt., Inc.*, No. CV 24-560-JWD-RLB, 2025 WL 634348, at *5 (M.D. La. Feb. 26, 2025); *Heacock v. Cook*, 45,868, p. 9 (La. App. 2 Cir. 12/29/10), 60 So.3d 624, 628.[4] Under Louisiana law, an intentional tort requires a showing that the tortfeasor "consciously desire[d] the physical result of his act" or that the injuries were "substantially certain to follow from his conduct . . . ." *Broden*, 427 So. 3d at 731 n.7. If the plaintiff sufficiently pleads an intentional tort, their claim falls outside the LMMA and the inquiry ends. *Riley*, 396 So.3d at 476; *Andrews*, 2025 WL 634348, at *5; *Heacock*, 60 So.3d at 628. Whether the intentional tort occurred in a medical setting becomes irrelevant because the plain language of the Act itself excludes the claim from coverage. *Jacobsson v. Traditions Senior Mgmt., Inc.*, No. CV 20-00507-BAJ-RLB, 2022 WL 677563, at *5 (M.D. La. Mar. 7, 2022) (plausible allegations defendant committed an intentional tort "plainly remove plaintiff's petition from the ambit of mere medical malpractice").

Although intentional torts are excluded from the LMMA, a plaintiff cannot simply rest on a conclusory allegation of intentional misconduct to bypass the LMMA. The plaintiff must allege sufficient facts demonstrating that the defendant consciously desired the physical result of their act or knew the physical result was substantially certain. *Morrow v. La. Med. Mut. Ins. Co.*, 2022-1006, p. 5 (La. App. 1 Cir. 2/24/23), 361 So.3d 986, 990. For instance, in *Butler-Bowie v. Olive Branch Senior Care Center*, the plaintiff filed suit against a nursing home, alleging the home

---

[4] In this sense, the sixth factor operates more as an exception rather than a traditional factor. *Schettler-Diaz v. Ochsner Med. Ctr. - Westbank, LLC*, 25-440, p. 9 (La. App. 5 Cir. 12/16/25), 428 So.3d 909, 917, *writ denied*, 2026-00067 (La. 3/31/26), 428 So.3d 691 ("While the MMA defines 'malpractice' as 'any unintentional tort or any breach of contract based on health care or professional services rendered . . . to a patient . . .,' [the intentional tort] factor is nevertheless included in the *Coleman* framework.").

negligently and intentionally deviated from the standard of care resulting in injury to a resident. 52,520, p. 1 (La. App. 2 Cir. 2/27/19), 266 So. 3d 478, 480. The Louisiana Second Circuit Court of Appeal concluded that the plaintiff's allegations fell within the LMMA. *Id.* at 483. As the court explained, the plaintiff's state court petition contained no facts demonstrating intentional harm and the "mere invocation of the word 'intentional'" alone was insufficient to avoid the Act. *Id.* Numerous other courts have expressed the same view: "[s]imply labeling a defendants' actions as intentional is not sufficient to avoid the LMMA." *Doe v. Banks*, 2023-0914, p. 6 (La. App. 1 Cir. 3/13/24), 385 So.3d 706, 710.[5]

*Broden* represents the Louisiana Supreme Court's most recent application of these principles. In *Broden*, the children of a nursing home resident alleged the defendants' intentional understaffing and underfunding of the nursing home caused their parent to receive inadequate care. 427 So. 3d at 728. The plaintiffs asserted an administrative negligence claim, while also generally alleging that the defendant's conduct was "intentional." *Id.* at 728. The Louisiana Supreme Court held that the plaintiff's claims were subject to the LMMA. *Id.* at 731. The court reasoned, *inter alia*, that the plaintiff's conclusory allegations of intentional misconduct alone were insufficient to circumvent the LMMA. *Id.* To proceed on an intentional tort would instead require plaintiffs to prove "[the defendant] consciously desired the injuries or death of [the resident] or that the same was substantially certain to follow [from the defendant's] conduct, which [plaintiffs] did not do." *Id.* at 731 n.7.

---

5 *Morrow*, 361 So. 3d at 990 ("S]omething more than a conclusory allegation of intentional conduct is required" to plead an intentional tort outside the LMMA); *Damond v. City of Baton Rouge*, 2024-1082, p. 10 (La. App. 1 Cir. 5/30/25) (plaintiff's claim did not fall outside the LMMA despite its labeling as "intentional" because plaintiff "did not set forth specific facts sufficient to establish that the defendants consciously desired the physical result of their acts or knew that the result was substantially certain to follow from their conduct").

*Broden* sits comfortably within settled precedent. Where a claim is neither an unintentional tort nor breach of contract, it falls outside the LMMA. *McDowell*, 345 So. 3d at 511 ("The statutory law leaves no doubt that 'malpractice' under the MMA does not include intentional acts; malpractice is specifically defined as 'any unintentional tort.'"). And where a plaintiff advances an intentional tort claim based on health care or professional services, they must demonstrate the defendant intended to injure or that the injury was substantially certain to flow from the defendant's actions. Nothing in *Broden* suggests there is anything unique about nursing home staffing shortage cases that would warrant a departure from these principles. *See Demouchet v. Nexion Health Mgmt., Inc.*, 2025-438, p. 11 (La. App. 3 Cir. 5/6/26), 433 So. 3d 291, 301 (applying *Broden* and finding that the plaintiff's art. 1953 fraud claim fell outside the LMMA). If anything, *Broden* appeared to contemplate a scenario in which the plaintiff's staffing shortage allegations could fall outside the LMMA, provided the intent standard was satisfied. 427 So. 3d at 731 n.7.

Based on *Broden*, the Court sees no reason to depart from its prior conclusion that Plaintiff's art. 1953 fraud claim is not governed by the LMMA. Under Louisiana law, art. 1953 fraud is neither a tort[6] nor a breach of contract claim, and therefore plainly falls outside the Act's definition of malpractice. *See Riley*, 396 So. 3d at 479 (art. 1953 fraud claim outside the LMMA); *Andrews*, 2025 WL 634348, at *5 (same).[7]

### B. Art. 1953 Fraud May be Based on a Present Intention Not to Perform a Future Action.

---

[6] Contractual fraud under art. 1953 should not be confused with the common law claim, fraudulent inducement, which is considered a tort. *See* Restatement, Torts chs. 22, 23.

[7] In the Court's view, Plaintiff is not required to show that Defendants consciously desired Mr. Sherrod's physical injuries or that his injuries were substantially certain to flow from Defendants' conduct. The "consciously desired" or "substantially certain" injury standard was set out by the Louisiana Supreme Court in *Bazley v. Tortorich*, 397 So. 2d 475 (La. 1981) to separate intentional and unintentional torts in general tort law. Art. 1953 fraud is not a tort claim. It is a "vice of consent" under contract law. *See* art. 1953; *Stutts*, 130 So. 3d at 814. The Court sees no reason to extend the *Bazley* intent requirement to Plaintiff's claim.

Defendants next argue that Plaintiff's art. 1953 claim fails as a matter of law because it is based on a promise of future performance—specifically, Defendants' representation during the admission process that Marrero Healthcare Center would provide adequate staff *during* Mr. Sherrod's residency. R. Doc. 114-1 at 9. To this end, Defendants rely on a common refrain in Louisiana law: "[t]o constitute actionable fraud, the false statements . . . must relate to facts then existing or which have previously existed." *Johnson v. Unopened Succession of Alfred Covington, Jr.*, 42,488, p. 13 (La. App. 2 Cir. 10/31/07), 969 So. 2d 733, 742.

Defendants are mistaken in two respects. First, Plaintiff clarified that her fraud claim is predicated on Defendants' misrepresentation of Marrero Healthcare Center's staffing levels at the time the representations were made; that is, on August 22, 2023, when Plaintiff entered into the admission agreement. R. Doc. 133 at 15. Second, the jurisprudence is clear that fraud may be predicated on a false promise of future performance. *Bass*, So. 2d at 351.[8] This is because "promises made without any intention of performance constitute a misrepresentation of a present rather than a future fact." *Id.*[9] Thus, to the extent Plaintiff elects to do so, she may proceed on the theory that Defendants committed fraud when they misrepresented their intention to provide adequate staff during Mr. Sherrod's residency.[10]

---

8 *See also Sun Drilling Prods.*, 798 So. 2d at 1152 ("Fraud may be predicated on promises made with the intention not to perform at the time the promise is made."); *Dutton & Vaughan, Inc. v. Spurney*, 600 So. 2d 693, 698 (La. Ct. App.1992), *writ denied sub nom. Dulton & Vaughan, Inc. v. Spurney*, 601 So. 2d 663 (La. 1992); *Polusky v. Allstate Petroleum, Inc.*, 180 So.2d 815 (La. App. 4th Cir. 1965); *Automatic Coin Enters., Inc. v. Vend-Tronics, Inc*., 433 So. 2d 766, 768–69 (La. App. 5th Cir.), *writ denied*, 440 So. 2d 756 (La. 1983); *see also* Litvinoff, *supra* note 2, at 50 ("[F]raud takes place, for example, when the benefit that can be expected from a business is falsely represented by one party in order to entice the other to acquire that business.").

9 *Bennett* provides no reason to question this principle. There, the court reversed a jury verdict after finding there was no "proof that [the defendant] intentionally committed fraud . . . by implying it *would* abide by its duty to provide care." 2026 WL 2035869, at *6. *Bennett's* decision rested on the sufficiency of the evidence. *Id.* The court did not hold that, as a matter of law, promises of future performance cannot constitute fraud.

10 The phrase "[f]raud . . . cannot be predicated on unfulfilled promises or statements as to future events" stands for two principles. *Dutton & Vaughan*, 600 So. 2d at 698. First, merely alleging that a party has failed to fulfill its promise—i.e. breached the agreement—is insufficient to establish fraud. *Automatic Coin Enters., Inc.*, 433 So. 2d at 768–69 ("[N]onperformance of an agreement to do something at a future time alone [is not] evidence of fraud.").

**C. Genuine Issues of Material Fact Preclude Summary Judgment**

Finally, Defendants maintain that dismissal is warranted because Plaintiff has failed to produce any evidence showing that Defendants intentionally misrepresented the level of staffing at Marrero Healthcare Center. R. Doc. 114-1 at 12.

Contractual fraud in Louisiana is comprised of three elements: "(1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to the contract." *Robinson v. Papania*, 2022-1010, p. 6 (La. App. 1 Cir. 3/6/23), 368 So. 3d 74, 80. "Fraud may also result from silence or inaction" provided the defendant had a duty to disclose the information. Art. 1953; *Terrebonne Concrete, LLC v. CEC Enters., LLC*, 2011-0072, p. 9 (La. App. 1 Cir. 8/17/11), 76 So. 3d 502, 509, *writ denied*, 2011-2021 (La. 11/18/11), 75 So. 3d 464. "[T]he duty to speak up and supply correct information does not immediately arise." *Del. Valley Fish Co. v. 3S. LLC*, 601 F.Supp.3d 7 (M.D. La. 2022) (internal quotation marks omitted). "If, however, a party volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to disclose the whole truth and ensure that the information volunteered is correct." *Id.* (internal quotation marks omitted).

"Specific intent to deceive is a necessary element of fraud." *Lomont v. Bennett*, 14-2483, p. 19 (La. 6/30/15), 172 So.3d 620, 634. Intent may be established by circumstantial evidence, "including highly suspicious facts and circumstances surrounding a transaction." *Sun Drilling*

Second, fraud cannot be based on a party's prediction about a future event outside their control. *See Am.'s Favorite Chicken Co. v. Cajun Enters*., 130 F.3d 180, 186 (5th Cir. 1997) (per curium) (franchisor's statements that a prospective franchisee "could expect sales similar to those in another area" and that sales "would definitely increase" were no more than "projections of future events and, as such, [were] not actionable as fraud under Louisiana law"); *Bass v. Coupel*, 93-1270, p. 11 (La. App. 1 Cir. 6/23/95), 671 So.2d 344, 351, *writ denied*, 95-3094 (La. 3/15/96), 669 So.2d 426 (seller's promise that a subdivision "would be approved by [parish authorities]" could not form the basis of a fraud claim).

*Prods. Corp. v. Rayborn*, 2000-1884, p. 16 (La. App. 4 Cir. 10/3/01), 798 So. 2d 1141, 1153, *writ denied*, 2001-2939 (La. 1/25/02), 807 So. 2d 840. "Summary judgment is rarely proper in fraud cases because the intent required to establish fraud is a factual question uniquely within the realm of the trier of fact because it so depends on the credibility of witnesses." *D & J Tire, Inc. v. Hercules Tire & Rubber Co.*, 598 F.3d 200, 205 (5th Cir. 2010) (internal quotation marks omitted).

Defendants maintain that Plaintiff's fraud claim fails because there is insufficient evidence supporting the second element of fraud, an intent to deceive. As aforementioned, Plaintiff's fraud claim is based in part on a representation allegedly made by admissions coordinator Brandy Bush that Marrero Health Care Center was "very well staffed." *Id.* at 133 at 15. Ms. Bush testified in deposition that she had no knowledge that the facility was understaffed when she made this statement. R. Doc. 114-1 at 12. Defendants maintain that "[i]f Ms. Bush had no knowledge that the facility was allegedly understaffed . . . then logic dictates that she could not have intentionally misled the Plaintiff about the level of staffing at Marrero Healthcare Center." *Id.*

In the Court's view, a genuine dispute remains regarding the intent element. Plaintiff submitted with her opposition record evidence suggesting Marrero Healthcare Center was understaffed during both Mr. Sherrod's admission and residency. This includes payroll data and expert testimony indicating that the number of nursing staff on sight was insufficient to meet the needs of the resident population. R. Docs. 133-1 at 15–16, 133-2 at 36–37. Plaintiff has additionally provided evidence in support of her position that Defendants were aware of these staffing concerns. This includes the deposition testimony of Plaintiff's expert Margaret Sheppard, a board-certified geriatric nurse, stating that Defendants would have known about

the staffing shortage because the facility had to prepare and submit payroll data to the government. R. Doc. 133-2 at 8.

Understaffing is the kind of condition that would deter a prospective nursing home resident from moving into Marrero Healthcare Center. A reasonable jury could therefore find that Defendants had motive to conceal or misrepresent this condition. The fact that Defendants may have committed fraud through an unknown participant, Ms. Bush, does not, in the Court's view, preclude liability. *See Castille v. Folck*, 338 So. 2d 328, 333 (La. Ct. App. 1976) (principal who feeds false information to its agent, who then relays it to a third party, is liable for the resulting misrepresentation); *see also* La. Civ. Code art. 2989 (a principal is bound by the authorized acts of his agent or mandatary). Aside from Ms. Bush's representation, Plaintiff's claim also rests on Defendants' concealment of Marrero's staffing levels. The record leaves open the possibility that Defendants intentionally remained silent on this issue to avoid deterring prospective residents.[11] Because a genuine dispute remains regarding Defendants' intent to deceive Plaintiff, summary judgment is inappropriate for the reason raised by Defendants.

## V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment, R. Doc. 114, is hereby **DENIED.**

New Orleans, Louisiana, this 9th day of October, 2026.

Eldon E. Fallon

THE HONORABLE ELDON E. FALLON

---

[11] To the extent Defendants challenge the "duty" requirement, the Court finds that a genuine dispute remains as to whether Defendants owed Plaintiff a duty to disclose their staffing shortage during the admission process. The Louisiana Supreme Court has recognized "the importance of the fact not disclosed" as a factor in determining whether a duty to disclose existed. *Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376, 1384 (La. 1990). A reasonably jury when faced with the record evidence could conclude that staffing levels was an important piece of information to prospective residents, and therefore one which Defendants had a duty to disclose.