**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **KATHY SHERROD, SURVIVOR OF SHELDON SHERROD** | * | **CIVIL ACTION NO. 25-1248** |
| | * | **JUDGE ELDON E. FALLON** |
| **VERSUS** | * | **MAGISTRATE JUDGE EVA J. DOSSIER** |
| **NEXION HEALTH AT MARRERO, INC. D/B/A MARRERO HEALTHCARE CENTER AND NEXION HEALTH MANAGEMENT, INC.** | * | |
| | * | |

* * * * * * *

**ORDER & REASONS**

Before the Court is a Motion to Set Recoverable Damages filed by Defendants Nexion Health at Marrero, Inc., d/b/a Marrero Healthcare Center ("Nexion Health at Marrero") and Nexion Health Management Inc. ("Nexion Management") (collectively, "Defendants"). R. Doc. 176. Plaintiff Kathy Sherrod opposes the motion. R. Doc. 184. Defendants replied. R. Doc. 188. Considering the record, briefing, and applicable law, the Court rules as follows:

## I. BACKGROUND

Plaintiff Kathy Sherrod is the surviving spouse of Sheldon Sherrod, a former resident of Marrero Healthcare Center. R. Doc. 1-1 at 1. Marrero Healthcare Center is a nursing home owned and operated by Nexion Health at Marrero and managed by Nexion Management. *Id.*

In August 2023, Mr. Sherrod was experiencing difficulties with breathing and balance, and was no longer able to get out of bed, use the restroom, or bathe independently. R. Doc. 133-4 at 18. Plaintiff was unable to care for Mr. Sherrod at home in his condition. *Id.* On August 22, Plaintiff visited Marrero Healthcare Center to inquire about her husband becoming a resident at the facility. *Id.* at 22–26. Plaintiff asked facility representatives about the care provided to residents, including residents' meal schedules, the frequency with which staff members bathed the residents, and whether staff members assisted residents in going outside. *Id.* at 31–32. Plaintiff testified in

deposition that staff members told her that her husband "would be in good hands," that there "was nothing . . . to worry about," and that "[Mr. Sherrod] would have the best care." *Id.* at 32–33. Plaintiff further testified she was informed the facility was "very well staffed." R. Doc. 133 at 15.

As part of the registration process, Marrero Healthcare Center presented Plaintiff with a Statement of Resident Rights form. R. Doc. 113-3. This form included an acknowledgement of roughly two dozen rights Mr. Sherrod would hold as a resident at the facility, including rights to "all care necessary," to "safe, decent, and clean conditions," to "be free from abuse and exploitation," and to "be treated with courtesy, consideration, and respect." *Id.* at 11. Plaintiff registered Mr. Sherrod by signing this form along with a Nursing Facility Admission and Financial Agreement. R. Doc. 113-3.

Mr. Sherrod lived at the Marrero Healthcare Center for a period of roughly four months, from August 22, 2023, to December 22, 2023. R. Doc. 1-1 at 1. Plaintiff maintains that the facility was understaffed during this time, and that as a result, Mr. Sherrod received inadequate care leading to the advancement of his medical ailments and premature death. Plaintiff proceeds in this action against Defendants on a fraud claim pursuant to La. Civ. Code art. 1953. R. Doc. 15. Plaintiff alleges that Defendants intentionally misrepresented and concealed their violation of statutory and regulatory requirements governing the minimum staff necessary to adequately operate a nursing home. Plaintiff represents that had she known Marrero Healthcare Center was understaffed, she would never have signed the admission agreement and Mr. Sherrod would not have resided at the facility. Plaintiff seeks damages and attorney fees under La. Civ. Code art. 1958. Doc. 1-1 at 11.

## II. PRESENT MOTION

Defendants move for a judgment barring Plaintiff from recovering nonpecuniary damages at trial and precluding Plaintiff from introducing evidence unrelated to pecuniary losses. R. Doc.

176-1 at 1. Defendants maintain that the recovery of nonpecuniary damages is impermissible under La. Civ. Code art. 1998 because Plaintiff did not hold a significant nonpecuniary interest in the subject admission agreement. *Id.* at 2–3.[1]

Plaintiff opposes the motion. R. Doc. 184. First, Plaintiff maintains that the instant motion is untimely because it is a dispositive motion subject to a non-evidentiary pretrial motion deadline that Defendants failed to meet. *Id.* at 4–5. Second, Plaintiff argues that the recovery of nonpecuniary damages under art. 1998 is permissible in the instant case because the admission agreement was intended to gratify a significant nonpecuniary interest. *Id.* at 8.

## III. DISCUSSION

La. Civ. Code art. 1998 governs the recovery of nonpecuniary losses in contract cases, including fraud claims arising under art. 1953.[2] Pursuant to art. 1998, "[d]amages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the non-performance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss." Art. 1998. Unpacked, this provision permits the recovery of nonpecuniaries where two conditions are satisfied: (1) the plaintiff "intended to gratify a

---

[1] Defendants additionally argue that Plaintiff should be barred from seeking nonpecuniary damages pursuant to Article 1958 because she never pled entitlement to this item of damages in her Petition for Damages. R. Doc. 176-1 at 2 n.2. Plaintiff's Petition sought "all damages resulting from" Defendants' fraud "under La. C.C. art. 1958." R. Doc. 1-1 at 11. Article 1958 adopts the damage provisions set forth in the Code's "general provision on contract damages," including Article 1998, which provides for nonpecuniary damages. *See infra*, note 2. Plaintiff's invocation of Article 1958 was sufficient to put Defendants on notice that Plaintiff may claim an entitlement to nonpecuniary damages.

[2] La. Civ. Code art. 1958 sets forth the damages available for Article 1953 fraud claims. Comment (c) to Article 1958 provides that "the general provisions on damages" found within the Code title "Conventional Obligations" dictate recovery under art. 1958. *See also Priority E.M.S. v. Crescent City E.M.S.*, 2001-2171, p. 16 (La. App. 4 Cir. 10/16/02), 829 So.2d 1066, 1076, *writ denied*, 2002-3111 (La. 2/21/03), 837 So.2d 632; *Stutts v. Melton*, 2013-0557, p. 9 (La. 10/15/13), 130 So.3d 808, 814–18. Article 1998 is one such general provision.

nonpecuniary interest" by entering the agreement; and (2) the defendant "knew, or should have known, that his failure to perform would cause" the plaintiff to suffer a nonpecuniary loss.

Revision Comment (c) to art. 1998 defines a nonpecuniary interest as "one intended to satisfy an interest of a spiritual order, such as a contract to create a work of art, or a contract to conduct scientific research, or a contract involving matters of sentimental value." The first requirement—that the plaintiff "intended to gratify a nonpecuniary interest"—may be satisfied in "hybrid, or mixed, situation[s]" where a plaintiff enters a contract "to gratify both pecuniary and nonpecuniary interests." *Young v. Ford Motor Co.*, 595 So. 2d 1123, 1133 (La. 1992). The plaintiff need only show that a nonpecuniary interest "constitute[d] . . . . one of the significant interests that [they] intended to gratify" by entering the agreement. *Id.* "[T]he nature of the contract (including the facts and circumstances attending its formation)" dictate whether the gratification of a nonpecuniary interest constitutes a significant interest. *Id.* at 1124.

Plaintiff directs the Court to two cases permitting the recovery of nonpecuniary damages under art. 1998 that she contends are analogous to the present matter. First, in *Smith v. University Animal Clinic, Inc.*, the Louisiana Third Circuit Court of Appeal allowed the recovery of nonpecuniary losses in an action involving the breach of a contract to board a house pet. 2009-745, p. 1, 3 (La. App. 3 Cir. 2/10/10), 30 So. 3d 1154, 1155, 1157, *writ denied*, 2010-0566 (La. 5/28/10), 36 So. 3d 247. In the court's view, "[t]he contract to board [] went beyond simply paying someone to feed a cat," and clearly "involved matters of a sentimental value," satisfying Revision Comment (c)'s definition of a nonpecuniary interest. *Id.* at 1157. The boarding service had advertised itself as providing "tender loving care" to the boarded pets to keep them "happy and active." *Id.* at 1157–58. The intrinsic nature of the business coupled with the defendant's representations was sufficient to find that the contract was made for the gratification of a

nonpecuniary interest and the defendant knew or should have known that its failure to perform would cause a nonpecuniary loss. *Id.* at 1157.

Second, *Free v. Franklin Guest Home* concerned a suit brought against a nursing home on behalf of a resident for breach of contract and negligence. 463 So. 2d 865, 873 (La. Ct. App. 1985), *writ denied sub nom. Free v. Franklin Guest Home*, 467 So.2d 535 (La.1985). *Free* was decided under art. 1998's predecessor, La. Civ. Code art. 1934, which similarly permitted the recovery of nonpecuniary damages where the object of a contract was the gratification of a nonpecuniary interest.[3] There, the Louisiana Second Circuit Court of Appeal allowed the recovery of nonpecuniary losses for the breach of the nursing home agreement, reasoning "[t]he contract was not one simply for room, or board, or linens and beddings, but was one for [the resident's] complete care and well-being." *Id.* at 874. The court further emphasized that, "[i]n a document entitled 'Patient's Rights,' the home promised to treat [the resident] with 'consideration, respect, and full recognition of his dignity and individuality.'" *Id.*

The Court finds *Smith* and *Free* instructive, and consistent with their reasoning, concludes that Plaintiff may recover nonpecuniary damages in the instant action.[4] Like *Smith's* boarding service and *Free's* nursing home, the nature of the contract involved matters of a sentimental nature. Plaintiff contracted for the complete care of her husband, who, due to his medical ailments, relied on the assistance of others to carry out the activities of his daily life in a safe, comfortable, and dignified way. When Plaintiff visited Marrero Healthcare Center, she inquired about multiple facets of the residents' lives, from meal schedules, to the frequency of assisted bathing, to whether mobility-impaired residents were given assistance in going outside. According to Plaintiff, staff members represented that Mr. Sherrod "would be in good hands," and that Plaintiff had "nothing

---

3 *See Young*, 595 So.2d at 1133 (art. 1998 "preserve[d] the substance of source article 1934(3)").

4 The Court elects not to resolve whether the instant motion is timely.

. . . to worry about." R. Doc. 133-4 at 32–33. And Defendants, in presenting Plaintiff with a Statement of Residents rights, held themselves out as providing a "safe, decent" environment where Mr. Sherrod would be "treated with courtesy, consideration and respect." *Id.* at 113-3 at 11. In the Court's view, these facts, alongside the intrinsic nature of the nursing home contract at issue, are sufficient to conclude that Plaintiff entered the admission agreement for the gratification of a significant nonpecuniary interest and Defendants knew or should have known that their purportedly fraudulent conduct would cause a nonpecuniary loss. Pursuant to art. 1998, Plaintiff may recover nonpecuniary damages.

## IV. CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that Defendants' Motion to Set Recoverable Damages, R. Doc. 176, is hereby **DENIED**.

New Orleans, Louisiana, this 12th day of October, 2026.

Eldon E. Fallon

THE HONORABLE ELDON E. FALLON